**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

Datanet LLC,

        Plaintiff,

    v.

Dropbox Inc.,

        Defendant.

CASE NO. 6:22-CV-01142-OLG

HONORABLE
ORLANDO L. GARCIA

**PLAINTIFF'S RESPONSE TO DEFENDANT'S OPENING**
**CLAIM CONSTRUCTION BRIEF**

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................. i

TABLE OF AUTHORITIES ......................................................................................... iii

EXHIBIT LIST .............................................................................................................. v

I.      BACKGROUND AND TECHNOLOGICAL OVERVIEW ................................... 1

II.     OVERVIEW OF PATENTS ..................................................................................... 4

        1.      The '478 and '348 Patents .......................................................................... 4

        2.      The '850 Patent ........................................................................................... 5

III.    DISPUTED TERMS FOR CONSTRUCTION FROM THE '850 PATENT ................... 6

        1.      "responsive to a selection to not restoring the previous version" (claims 6 & 14).. 7

        2.      "storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location" (claims 1, 6, 10, 14, & 18) ......................... 9

        3.      "substantially imperceptible impact…from a user's point of view" (claims 9 & 17) ......................................................................................................... 11

        4.      "a selection to preview a selected previous version of the file" (claims 1, 10, & 18) .......................................................................................................... 15

        5.      "retrieving the restorable representation" (claims 1, 6, 10, 14, & 18) ................. 18

IV.     DISPUTED TERMS FOR CONSTRUCTION FROM THE '478 AND '348 PATENTS ........................................................................................................... 21

        1.      "temporary first storage location" ('478 Patent claims 1, 8–11) / "first temporary storage location" ('478 Patent claims 1, 8–11) / "temporary storage location" ('478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 23, 24) ................. 22

        2.      "intermediate storage location" ('478 Patent claim 1); ('348 Patent claims 1, 8, 12–15, 27, 28, 30) ................................................................................... 24

        3.      "final destination" ('478 Patent claim 1; '348 Patent claim 1) ............................ 25

        4.      "event" ('478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 26, 27) ...... 26

     5.     "timer" ('478 Patent claims 8 & 10; '348 Patent claim 26)................................... 28

V.     ADDITIONAL TERM FOR CONSTRUCTION ............................................................. 28

     1.     "archive file" ('478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 20, & 26) ........................................................................................................ 29

VI.     CONCLUSION.................................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### <u>Cases</u>

*Abbott Labs. v. Syntron Bioresearch, Inc.,*
    334 F.3d 1343 (Fed. Cir. 2003)........................................................................ 14

*Aloft Media, LLC v. Yahoo!, Inc.*,
    No. CIV.A. 6:08-CV-255, 2009 WL 2058661 (E.D. Tex. July 13, 2009) ................ 23, 26

*Altiris v. Symantec Corp.*,
    318 F.3d 1363 (Fed.Cir.2003)..................................................................... 18, 30

*Amhil Enters. Ltd. V. Wawa, Inc.*,
    81 F.3d 1554 (Fed. Cir. 1996)........................................................................ 13

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*,
    512 F.3d 1338 (Fed. Cir. 2008)..................................................................... 30

*Ecolab, Inc. v. Envirochem, Inc.*,
    264 F.3d 1358 (Fed. Cir. 2001)..................................................................... 12

*EmeraChem Holdings, LLC v. Volkswagen Grp. Of Am., Inc.*,
    714 F. App'x 995 (Fed. Cir. 2017) .............................................................. 23, 25

*Free Motion Fitness, Inc. v. Cybex Intern., Inc.*,
    423 F.3d 1343 (Fed. Cir. 2005)..................................................................... 24

*Genentech, Inc. v. Chiron Corp.*,
    112 F.3d 495 (Fed.Cir.1997)......................................................................... 18

*Gillette Co. v. Energizer Holdings, Inc.*,
    405 F.3d 1367 (Fed. Cir. 2005)..................................................................... 24

*Interval Licensing LLC v. AOL, Inc.*,
    766 F.3d 1364 (Fed. Cir. 2014)............................................................. 12, 13, 14

*LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc.*,

    275 F.3d 1347 (Fed. Cir. 2001) (en banc)........................................................ 13

*NetJumper Software, L.L.C. v. Google, Inc.*,

    No. 04-70366, 2008 WL 835819 (E.D. Mich. Mar. 29, 2008) ........................... 8

*Phillips v. AWH Corp.*,

    415 F.3d 1303 (Fed. Cir. 2005)............................................................... 15, 24

*Smartphone Techs. LLC v. HTC Corp.*,

    No. 6:10-CV-580 LED-JDL, 2012 WL 12897439 (E.D. Tex. June 4, 2012).................. 22

*Varco, L.P. v. Pason Sys. USA Corp.*,

    436 F.3d 1368 (Fed. Cir. 2006)........................................................................ 28

*Vederi, LLC v. Google, Inc.*,

    744 F.3d 1376 (Fed.Cir.2014)........................................................................... 3

*Vulcan Eng'g Co. v. Fata Aluminum, Inc.*,

    278 F.3d 1366 (Fed. Cir. 2002)........................................................................ 28

## **Other Authorities**

Manual of Patent Examining Procedure,

    9th ed., rev. 8 § 2111.3 (Jan. 2018)................................................................ 18

### EXHIBIT LIST

| Exhibit | Description |
|---------|-------------|
| A | U.S. Patent No. 8,473,478 ('478 Patent) |
| B | U.S. Patent No. 9,218,348 ('348 Patent) |
| C | U.S. Patent No. 10,585,850 ('850 Patent) |
| D | U.S. Provisional Patent Application No. 60/234,221 |
| E | August 16, 2023 Declaration of Dr. Sam Malek |

Plaintiff Datanet LLC ("Plaintiff" or "Datanet") submits this response to Defendant Dropbox Inc.'s ("Defendant" or "Dropbox") Claim Construction Brief (hereafter "Brief"; Dkt. 43) requesting construction of claim terms in U.S. Patent Nos. 8,473,478 ('478 Patent) (attached hereto as Exhibit A), 9,218,348 ('348 Patent) (attached hereto as Exhibit B), and 10,585,850 ('850 Patent) (attached hereto as Exhibit C) (collectively the "Patents-in-Suit").

## I.    BACKGROUND AND TECHNOLOGICAL OVERVIEW

This case involves an invention conceived in the late 1990s and early 2000s. During that time, organizations and companies struggled to provide their users with satisfactory data backup solutions. System administrators typically approached the problem by configuring their servers and computer systems to regularly run programs that would attempt to copy files from a user's home directory to a network storage device. These programs were run according to a predetermined fixed schedule. Due to slow network data transmission rates and limited storage availability, the backup jobs would typically be run at most every hour, but more likely once a day or once per week. Ex. A, '478 Patent, 2:15–28.

Since backups were executed according to a predetermined and fixed schedule, file modifications made by the user since the last backup operation would be lost if their computer crashed or the file was lost or corrupted. *Id.*, 2:15–29. Even running backups once per hour could lead to significant data losses. Additionally, these conventional approaches required that the backup storage device be connected and available at the time of the scheduled backup. *Id.* If the backup storage device was unavailable, the scheduled backup would fail and a further backup would not be attempted until the next scheduled backup operation. *Id.* Outdated backup files and data loss were the norm, with very real consequences. "As reported by the Safeware Insurance Agency, in 1999 alone, insurance claims for damaged, lost and stolen computers (primarily notebook computers) totaled more than $1.9 billion." *Id.*, 1:46–50.

Datanet's inventors conceived of an entirely new way of managing data backups that fundamentally altered the way computer backups operated to provide near real-time backup

operations even when backup storage devices are temporarily unavailable. *Id.*, 6:34–43. Instead of relying upon scheduled backups, Datanet's technology actively monitors a computer's operating system for file operations to be performed on user files including, as one example, requests to save a modified file. *Id.*, 7:12–7:27. Upon detecting those operating system activities, the technology initiates, in near real time, a backup operation to a local queue or buffer. *Id.* When a suitable backup storage device becomes available, the modified file contents are transmitted to the backup storage device for long-term storage. *Id.*

Datanet's technology may detect all a user's file modifications when the operating system initiates those modifications, regardless of which program made the change. Then, if certain criteria are met, those modified files can be moved to the output queue and backed-up to long-term final storage, locally or remotely. An example timeline illustrating the real-time nature of Datanet's backup solution is provided by FIG. 3 of the '478 Patent (shown below).



FIGURE 3

Referring to FIG. 3, the user's initial request to open a file is detected (step 205) by monitoring the operating system's file open operations leading to an immediate backup of the file in its original state (step 210). *Id.* After the user is finished working and the user saves the file (step

225), the operating system's file save operations are detected and an additional backup can be created to capture the user's modifications (step 235). *Id*.

Another embodiment of this technology, described in the incorporated-by-reference (*see id.*, 1:4–6) Provisional Patent Application[1] ("Provisional", attached hereto as Exhibit D), uses an "ActiveX" control called the "AccuSafe Kernel" to "watch[] the operating system, and detect[] specific events at the operating system level that correspond to file reads, writes, deletes, and other fundamental file system activities." Ex. D (Provisional Application), at DATA001642. The AccuSafe Kernel does this in real-time, as the user is working as normal on their computer. *Id*. Once an event is detected, the AccuSafe backup process "happens as quickly as it can – to appear instant to the user." *Id.*

In addition to data backup, the Patents-In-Suit disclose that it was very difficult for ordinary users to recover backed up data. Ex. A, '478 Patent, 2:56–3:3. There were no real options linking multiple file versions to create a continuous operating file revision history. *Id*., 8:4–10. Datanet conceived a new way to recover archived files letting users preview them before selecting a version to restore. Ex. C, '850 Patent, 10:4–33. The '850 Patent claims these improvements, providing users with the ability to select, preview, and restore multiple versions of archived files. *Id.*

Given the rapid increase in computer sophistication of the general public, the Patents-In-Suit claim this novel technology using language which is easily understood in today's technologically savvy world, and which would have been clearly understood by computer scientists and engineers at the time of the invention (a "Person of Ordinary Skill in the Art" or "POSITA"). As a result, there is limited need for Court intervention in claim construction—as explained more fully below, a POSITA and a lay jury will clearly understand words like "temporary", "first", "final", "event", "intermediate", and "timer." This Court should resist Dropbox's attempt to re-write and narrow the meaning of these already understood terms.

---

[1] Provisional patent applications incorporated by reference into a patent are part of the intrinsic patent record. *See Vederi, LLC v. Google, Inc.*, 744 F.3d 1376, 1383 (Fed.Cir.2014) (considering the provisional application as part of intrinsic record for claim construction).

## II.    OVERVIEW OF PATENTS

### 1.    The '478 and '348 Patents

The '478 and '348 Patents are titled "Automatic Real-Time File Management Method and Apparatus." The two patents relate to a method for archiving files. *See, e.g*., Ex. A, '478 Patent, Claim 1 and Abstract; Ex. B, '348 Patent, Claim 1 and Abstract. The Patents describe a method of backing up computer files that was new by providing real-time, continuous backup even when the desired backup location is not available and done with an imperceptible impact on system performance from a user's point of view.

Independent Claim 1 of each of the patents included below for the Court's convenience:

**'478 Patent, Claim 1**. In a computing device, a method for archiving files comprising:

detecting an instruction by an operating system to perform an operation on an operating file;

creating an archive file from the operating file and storing the archive file in a temporary first storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;

searching the first temporary storage location for the archive file responsive to the occurrence of a first event; and

moving the archive file to a second storage location responsive to a second event, the second storage location being a permanent storage location,

after storing the archive file in the first temporary storage location, updating a database to indicate that the archive file is located in the first temporary storage location;

determining a final destination for the archive file;

moving the archive file from the first temporary storage location to an intermediate storage location;

updating the database to indicate that the archive file is located in the intermediate storage location; and

after moving the archive file to the second storage location, updating the database to indicate that the archive file is located in the second storage location.

**'348 Patent, Claim 1**. A method for archiving files, comprising steps of (a) to (i) following:

(a) the step of detecting an instruction by a resident program in a computing device for performing an operation on an operating file;

(b) the step of creating an archive file from the operating file and storing the archive file in a temporary storage location temporally proximate to the operation being performed on the operating file and responsive to detecting the instruction;

(c) the step of identifying presence of the archive file in the temporary storage location responsive to the occurrence of a first event;

(d) the step of transmitting the archive file to a second storage location responsive to a second event, the second storage location being an intermediate or a permanent storage location;

(e) after storing the archive file in the temporary storage location, updating a database to indicate that the archive file is located in the temporary storage location;

(f) determining a final destination for the archive file;

(g) moving the archive file from the temporary storage location to an intermediate storage location;

(h) updating the database to indicate the archive file is located in the intermediate storage location; and

(i) after moving the archive file to the second storage location, updating the database to indicate the archive file is located in the second storage location.

## 2. The '850 Patent

The '850 Patent" is titled "Automatic Real-Time File Management Method and Apparatus." The '850 Patent shares the same specification as the '348 and '478 Patents, however, the '850 Patent recites a method of "restoring a file to a previous version of the file." Ex. C, '850 Patent, Abstract. The method of restoring a file includes the ability to preview other versions of the same file and to choose which previous version of the file to restore.

Independent Claim 1 of the '850 Patent is shown below for the Court's convenience:

**Claim 1**. A method of restoring a file to a previous version of the file, a current version of the file being available at a local storage location, comprising the steps of:

presenting information for a collection of one or more previous versions of the file, the information for the collection including information indicative of at least one or more previous versions of the file, wherein a restorable representation of each version, V, of the previous versions, is retrievable from a remote storage location, the restorable representation having at least information required for recovering the version V by a computational machine with the current version being accessible, the remote storage location being accessible through a network;

responsive to a selection to preview a selected previous version of the file based on the presented information for the collection of (A), presenting a

presentable representation of the selected previous version, the selected previous version being one of the previous versions of the file in the presented information for the collection, the presentable representation having at least information required for presenting at least a portion of the selected previous version by the computation machine with the current version being accessible; and

responsive to a selection to restore the selected previous version, retrieving the restorable representation of the selected previous version from the remote storage location and storing the selected previous version by the computational machine as the current version on the local storage location, the selected previous version available from the restorable representation of the selected previous version.

## III.   DISPUTED TERMS FOR CONSTRUCTION FROM THE '850 PATENT[2]

Dropbox has identified five terms from the '850 Patent that it requests the Court construe:

1)      "responsive to a selection to not restoring the previous version" (claims 6 & 14)

2)      "storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location" (claims 1, 6, 10, 14, & 18)

3)      "substantially imperceptible impact…from a user's point of view" (claims 9 & 17)

4)      "a selection to preview a selected previous version of the file" (claims 1, 10, & 18)

5)      "retrieving the restorable representation" (claims 1, 6, 10, 14, & 18)

Dropbox identifies terms 1 and 3 for construction due to an erroneous argument that those terms are indefinite. They are not. Indeed, as explained below, a person of ordinary skill in the art would have no problem understanding the meaning of the terms. The other three terms are all also understandable—without the inappropriate additional claim language added by Dropbox—and should be construed as indicated by Datanet.

---

[2] While this Court's Scheduling Order was clear on the default briefing order for claim terms (*See* Dkt. 27 at 9), Dropbox's Brief proceeds in a different order—starting with the highest numbered patent and not the lowest. For the sake of the Court and for legibility, this brief adopts the same order of presentation.

*1.* ***"responsive to a selection to not restoring the previous version"*** *(claims 6 & 14)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| Indefinite | No need for construction; plain and ordinary meaning. Alternatively, "Responding to an input (such as, for example but not limited to, clicking on another version, or clicking on a 'cancel,' or interacting with some other input/element) that the user does not wish to restore the earlier version it selected for preview." |

The dispute over this claim limitation is simple: Dropbox argues that it is impossible to perform a method which requires action both "responsive to a selection to restore the selected previous version" ***and*** "responsive to a selection to ***not*** restoring the previous version." Brief, 3–4. But that is not true. A user can (pre)view and restore multiple times across various versions of files. A user might first select to restore a first version, but, on second thought, decide not to restore that version but to view and restore a different version. Indeed, the Provisional application showed an example of how a user could select to not restore a previous version, by choosing another version or selecting "close."

 

Ex. D, Provisional, at DATA001477 (arrows added).

None of this makes the claim "insolubly ambiguous" as is required to hold the claim indefinite. Instead, like ***all*** dependent claims, it requires the performance of additional method steps for infringement: namely, the selection ***not*** to restore the previous version but instead to restore a second previous version.

This and similar claim language has been used in numerous patents. For example, U.S. Patent No. 5,890,172 had an independent claim 1 which recited initial method steps which were done, "responsive to a selection of the first icon . . ." *NetJumper Software, L.L.C. v. Google, Inc*., No. 04-70366, 2008 WL 835819, at *8 (E.D. Mich. Mar. 29, 2008). A following dependent claim recited additional steps "responsive to a selection of the second icon." *Id.* at *10. The Court in *NetJumper* did not invalidate the dependent claim as indefinite because it was impossible to select the first and second icon at the same time. Instead, the Court held that the dependent claim was just a later step in the sequence. *Id.* at *11. Indeed, reading the method steps as requiring the selection of the first icon and the second icon at the same time makes no sense.

It similarly makes no sense to interpret the dependent claims in this case as mandating the concurrent selection of both "restoring" and "not restoring" previous versions of a file. These are method steps. All that is required is that they each be performed—not that they be performed simultaneously, as Dropbox appears to argue. This is also the considered opinion of Dr. Sam Malek who remarks that, "a POSITA would understand that, compared to the independent claims, the dependent claims comprise an additional user interaction, and would understand that this interaction involves choosing not to restore one selected previous version and instead choosing to restore a different selected previous version. . . . A POSITA would understand that a user could select and preview multiple previous versions before deciding to restore a selected previous version." Ex. E, Malek Decl., at ¶¶ 41, 43.

A.      *The Court Should Adopt Datanet's Construction.*

While Datanet believes the claim language is clear and understandable as-is, since Dropbox identified this term for construction, Datanet has offered a construction of this claim language to assist the jury. "Responsive to a selection to not restoring the previous version" should be construed to mean "Responding to an input (such as, for example but not limited to clicking on another version, or clicking on a 'cancel,' or interacting with some input/element) that the user does not wish to restore the earlier version is selected for preview." This is entirely consistent with the diagrams in the intrinsic record which show a user being able to "view" versions and then

choose to "restore" or alternatively choose a different version or to click "close" and not restore the previous version. *See* Ex. D at DATA001477 (images on previous page). All of this is done responsive to user input as Datanet's proposed claim construction makes clear.

> B.    *The Court Should Reject Dropbox's Construction.*

Dropbox has offered no alternative construction. Thus, should the Court find that the claim is sufficiently definite—as it must—the Court should hold that this term would be understood according to its plain and ordinary meaning or adopt Datanet's proposed construction.

> 2.    ***"storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location" (claims 1, 6, 10, 14, & 18)***

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| Plain and ordinary meaning. | No need for construction; plain and ordinary meaning. Alternatively, "Saving the earlier version of the file … as the most recent version of the file / saving the second chosen earlier version of the file … as the most recent version of the file." |

Dropbox identified this term as needing construction by the Court, but in their brief indicates "No need for construction." Datanet agrees. Dropbox's Brief, however, appears to tell a different story than their proposed construction of "plain and ordinary meaning." In its Brief, Dropbox intentionally misreads the claim language and argues:

> When a previous version of a file needs to be restored at a local storage location while a current version of the file is available on a local storage location, the '850 Patent purports to provide a solution—i.e., using the above scenario, the selected previous version v2 is stored "as the current version" v5 on the local storage location. The result is that v5 as it existed before this method was performed is **no longer stored on the local storage location.**

Brief, 8 (emphasis added). This, however, is ***not*** the plain and ordinary meaning. Indeed, Dropbox's arguments are at odds with the specification and the intrinsic record, which clearly disclose the restoration process, including "sav[ing] the existing file (if it needs to!) before writing it with the copy the user is about to restore." Ex. D, Provisional, at DATA1716.



Ex. D, Provisional, at DATA00171516. This language in the Provisional makes it clear that what is contemplated is the saving of the "current version" and then the restoration to create a new "current version." Nowhere in the specification, claims, or provisional is there any suggestion let alone a requirement that "v5 as it existed before this method was performed is no longer stored on the local storage location" as Dropbox argues. The "v5" may or may not also be saved on the local storage location—the claims are silent on that point.

> A.    *The Court Should Adopt Datanet's Construction.*

Datanet has proposed a construction which is consistent with the specification and the provisional application: "storing the selected previous version … as the current version on the local storage location" does **not** mean throwing away the existing version but, instead, "saving the earlier version of the file … as the most recent version of the file." That is precisely what is shown in the images above. Dropbox bemoans the construction of "current version" as "most recent version." But, as explained above, Dropbox's complaint is nothing more than mere semantic sophistry—when a version is restored, it is the most recent version of the document, and ***it becomes the current version.*** That is what the claim language and specification state: "storing the selected previous version by the computational machine as the current version on the local storage location." '850 Patent at Claim 1. Dropbox's nonsensical argument that after the restoration process, the restored version is not the current version—or the reading in of a non-existent limitation that the previous current version must be removed from the local device—makes no sense at all and, as shown above is directly at odds with the intrinsic evidence.

       B.       <u>*The Court Should Reject Dropbox's Construction.*</u>

Dropbox's "construction", which would erase a version anytime a restore occurs, is directly at odds with what is disclosed in the intrinsic record, and, for that reason, cannot be correct. Datanet's proposed construction clarifies this and is consistent with what is disclosed in the intrinsic record—by construing this term to mean "saving the earlier version of the file . . . as the most recent version of the file." Indeed, that is exactly the intent of what is being accomplished and exactly what is shown in the intrinsic record. (*See images above.*) Not only that, but it is consistent with how a person of ordinary skill in the art would understand the claim. *See* Ex. E, Malek Decl., at ¶ 51. Dr. Malek opines that "a POSITA would understand that the claim term can be read as Datanet proposes: storing the selected previous version as the current version is the same as storing it as the most recent version" whether that restored file is called version 5 or version 6 is "immaterial and not part of the claim limitation." *Id.*

       3.       ***"substantially imperceptible impact…from a user's point of view" (claims 9 & 17)***

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| Indefinite | No need for construction; plain and ordinary meaning. Alternatively, "computing device performance is not affected perceivably by the user." |

Dropbox argues that this language from Claims 9 and 17 render those claims indefinite because "substantially imperceptible impact … from a user's point of view" fails to inform a person of ordinary skill in the art with a reasonable certainty about the scope of the invention. Not so. As an initial matter, this aspect of the claim is fully disclosed in the specification: Steps "210" and "215" shows where the "file capture block" first "detects the instruction and captures the operating file" and then where the "the resident program opens the operating file." '850 Patent at 7:9–11, 7:2122. According to the patent, "[s]tep 210 is performed by momentarily delaying the execution of step 215 **in such a manner as to have little or no perceptible impact on system performance from the users point of view.**" *Id.* at 7:25–28 (emphasis added); Fig. 3 (below).



FIGURE 3

That is, the specification describes what is contemplated by the claim language, namely that the process is performed in real time to the extent possible without impacting the user's experience, or stated another way, the computing device performance is not affected perceivably by the user. Dropbox takes issue with this claim language because "substantially imperceptible" is a term of degree and, to hear Dropbox tell it, terms of degree are indefinite because "there is no objective standard." Brief, 9. That is wrong as a matter of law. "[T]erms of degree" are not "inherently indefinite. Claim language employing terms of degree has long been found definite where it provided enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing LLC v. AOL, Inc*., 766 F.3d 1364, 1370 (Fed. Cir. 2014). For example, the Court in *Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367–69 (Fed. Cir. 2001), held that a similar claim term, "substantially uniform" should be construed as "largely, but not wholly the same in form." Likewise, the Federal Circuit sitting *en banc* in *LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc*., 275 F.3d 1347, 1354 (Fed. Cir. 2001) (en banc) held that "the claim language supports the correctness of the district court's interpretation of 'substantially completely wetted' as '[l]argely, but not necessarily wholly, surrounded by resin.'" *See also Amhil Enters.*

*Ltd. V. Wawa, Inc.*, 81 F.3d 1554, 1562 (Fed. Cir. 1996) (construing "substantially vertical face" as "the same as or very close to 'vertical face'").

As shown above, Dropbox's citation to *Interval Licensing* undermines Dropbox's case. *Interval Licensing* makes clear that "terms of degree ha[ve] long been found definite." 766 F.3d at 1370. What is important is if there is "provided enough certainty to one of skill in the art when read in the context of the invention." *Id*. Here, like "substantially uniform" "substantially completely wetted" and "substantially vertical face"—all of which were held to be amenable to construction—a person of ordinary skill in the art could easily watch the operation of a program and determine if it is operating with a "substantially imperceptible impact … from a user's point of view."[3] This is the opposite of the situation in *Interval Licensing* where the Court rightly could not figure out what would be "distract[ing]"—in this case, there is a clear delineation, either something is perceptible to the user or it is not. Here, the phrase "substantially imperceptible impact … from a user's point of view" is entirely understandable to a person of ordinary skill in the art—describing a limitation which is met when a computing device performance is not affected perceivably by the user. One does not need to be an expert on computers to understand this claim limitation—we have all experienced the use of computer programs that on the one hand (1) work in the background without us even consciously noticing anything, and, on the other hand, (2) computer programs and updates where the user is forced to wait (and perhaps step out for a coffee) as processes slowly occur. This experience is well understood by experts and persons of ordinary skill in the art, as Dr. Maleck confirms: "[A] POSITA would be familiar with the general guidelines in the software industry as to what is a substantially imperceptible delay . . . When combined with the teachings in the specification and the provisional application, which in describing the function

---

[3] Dropbox's argument that there is "system-to-system variability" (Brief, 10) barely merits addressing. It is frequently the case that an infringer may figure out how to "design around" a claim—such as by running it on ancient hardware that makes the program's operation noticeable. That is not an argument that the claim is indefinite, but instead a non-infringement argument—that when the accused product is run on sufficiently slow hardware, its operation is noticeable to the end user.

of the backup program state, 'the user must not perceive that the [backup] application is in any[]way decreasing the performance of the PC,' a POSITA would clearly understood what is meant by this claim limitation." Ex. E, Malek Decl., at ¶¶ 60–61. There are even metrics in the industry related to acceptable response times. *Id.* at ¶ 60. Indeed, lest any question remain in the Court's mind, the intrinsic evidence describes exactly what is contemplated when the inventors were concerned about the backup procedure having an imperceptible impact—suggesting the threshold for impact at 2% of CPU performance:

> **RISK:** *Performance Impact of AccuSafe Core Application – 4.5*
> The performance impact must be minimal. This is a difficult yet critical aspect of the program as a whole, not just the Advisor – but it will be mentioned in each feature that it is expected to be a significant challenge. A 2% CPU performance impact has been set as the threshold of acceptability – the user must not perceive that the AccuSafe application is in anyway decreasing the performance of his PC.

Ex. D, Provisional, at DATA001691. Here, as confirmed by Dr. Malek (as well as our own experience with computers), while it is a "term of degree," in this case whether or not a process has a "substantially imperceptible impact . . . from a user's point of view" more than provides provided "enough certainty to one of skill in the art when read in the context of the invention." *Interval Licensing,* 766 F.3d at 1370.

Finally, it is telling that in Dropbox's arguments, Dropbox criticizes the use of the phrase "imperceptible impact" as being indefinite but fails to consider the claim element as a whole. Such an approach is entirely improper. The claim limitations must be considered *as a whole. Abbott Labs. v. Syntron Bioresearch, Inc.,* 334 F.3d 1343, 1351 (Fed. Cir. 2003) ("The usage of the disputed claim terms in the context of the claims as a whole also informs the proper construction of the terms."); *Phillips, v. AWH Corp*., 415 F.3d 1303, 1314 (Fed. Cir. 2005) ("[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms."). Pulling out and criticizing a single two-word phrase in isolation as being indefinite, when the other portions of the claim element (e.g., "from a user's point of view") would provide useful information to a POSITA, is an incorrect analysis.

A.     *The Court Should Adopt Datanet's Construction.*

The phrase "substantially imperceptible impact … from a user's point of view" is entirely understandable to a person of ordinary skill in the art and should be construed to mean the "computing device performance is not affected perceivably by the user." A person of ordinary skill in the art, or even a lay juror who has used older hardware, could easily see the operation of a system and determine whether the performance was impacted or not.[4]

B.     *The Court Should Reject Dropbox's Construction.*

Dropbox has offered no alternative construction. Thus, should the Court find that the claim is sufficiently definite—as it must—the Court should hold that this term would be understood according to its plain and ordinary meaning or adopt Datanet's proposed construction.

**4.     *"a selection to preview a selected previous version of the file" (claims 1, 10, & 18)***

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| A selection to view the content of a selected previous version of the file before restoration / viewing the content of the selected revision of said file before restoration/viewing the selected another revision of said file before restoration | No need for construction; plain and ordinary meaning. Alternatively, "Show or represent an example of the earlier version of the file / showing or representing an example of an earlier version that has been chosen" |

"A selection to preview a selected previous version of the file" is a straight-forward and understandable claim term. It means exactly what it says, and can be seen in the image from the intrinsic record below—making a selection to "view" or "preview" a different version:

---

[4] Should this Court, nevertheless, believe that this construction is not sufficiently definite, and while numerical precision is not required for claims to be definite, the Court can always fall back on the 2% CPU impact recited in the intrinsic evidence and printed above.  While normally, as discussed herein, it would be impermissible to import into a claim limitation material from the specification, should the Court find that this limitation is indefinite without reference to the specification, the Court is required to construe the term in a manner which preserves its validity. *Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed.Cir.1998).



Ex. D, Provisional, at DATA001477 (arrow added). As such, there is no need for the Court to construe this easily understood term. Should the Court determine to construe this term anyway, Datanet has proposed a construction which mirrors what is said in the claim and what is taught in the intrinsic record, i.e., to "show or represent an example of the earlier version of the file." Datanet respectfully requests that the Court adopt that construction rather than engage in Dropbox's invitation to err by reading in a host of limitations that do not exist in the claim language and making things worse and less clear.

     A.     *The Court Should Adopt Datanet's Construction.*

Datanet's proposed construction, "show or represent an example of the earlier version of the file" is consistent with what is meant by the claim language. Furthermore, Dropbox's argument that this plain construction was somehow disclaimed by statements made during prosecution with respect to the Whiting reference (*see* Brief, 14) is incorrect and misstates the claim language. During prosecution all Datanet stated was that "Whiting in col. 31, line 56 merely states that 'user selects from the desired backup set.'" Brief at Ex. G, DATA001227. This is consistent with how Whiting worked. In the Whiting invention,

> To view or restore files from a backup, a user may mount the backup set as a real-time (i.e., with disk access times, not access times) temporary disk volume with a directory structure identical to that of the entire original disk volume at the time of the backup. The user may then access the files directly using his own applications, without first having to copy them using a separate restore program.

Brief at Ex. I, 5:41–47. That is, the "backup set" of Whiting is merely a copy of a directory from the user. Such a "backup set" does not allow for versioning of a single file or providing any information about previous versions of files—it merely copies selected folders and sub-folders. As such, as Datanet told the examiner, "Whiting neither discloses the feature of 'a selection to preview a selected previous version of the file' nor discloses the feature of 'presenting a presentable representation of the selected previous version, the selected previous version being one of the previous versions of the file in the presented information for the collection.'" That is still accurate and correct. Whiting discloses neither of those things.

Construing "a selection to preview a selected previous version of the file" as "show or represent an example of the earlier version of the file" does nothing to change that analysis. Whiting likewise does not show or represent examples when it copied files and entire folders of files. As it relates to recovery, Whiting discloses little more than mounting a "temporary disk volume with a directory structure identical to that of the entire original disk volume at the time of the backup" and letting the user "then access the files directly using his own applications." *Id.* It does not disclose showing or representing an example of the earlier version of the file. Datanet's proposed construction is consistent with what is taught in the intrinsic evidence and should be adopted.

## B.   *The Court Should Reject Dropbox's Construction.*

Dropbox's proposed claim construction replaces "preview" with "view the content of" and out of nowhere adds the additional limitation "before restoration." These changes to the claim should be rejected. As an initial matter, "preview" does ***not*** necessarily mean to "view the content of." For example, people routinely watch movie "previews." Rewriting the claim language to change "preview" to "view the contents of" is inappropriate, does not add any clarity, and should be rejected by the Court.

Next, Dropbox gratuitously adds the clause "before restoration" which is nowhere to be found in the claim language the Court was asked to construe. The phrase "a selection to preview a selected previous version of the file" in and of itself does not require the addition of "before restoration." In support of its construction, Dropbox cites *other* claim language, such as

"presenting at least a portion of the selected previous version," but is entirely unclear as to why it is reading those other limitations into this claim language. Brief, 12. To the extent *other* limitations require "view[ing] the content of" a file—that should be left to those limitations and not artificially read into completely different claim language. The Court should reject Dropbox's proposed construction of this term.

Dropbox's construction should be rejected for a second reason—it unnecessarily and improperly injects an order to the claim limitations, by stating that the "selection" is done "before restoration." The law is that, by default, steps in a claimed method may be performed in *any* order. *See Altiris v. Symantec Corp.*, 318 F.3d 1363, 1369–70 (Fed.Cir.2003). Also, the law is that claims using the word "comprising," as these do, are inclusive or open-ended and allow for the inclusion of additional un-recited method steps. *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed.Cir.1997); *see also* Manual of Patent Examining Procedure, 9th ed., rev. 8 § 2111.3 (Jan. 2018). Here, "previewing" a version and "restoring" a version are two separate steps where the previewing *may* be done before restoring—but it does not *have* to be done first. Patent law is clear these may be done in any order and, thus, "before restoration" is inappropriate in the construction.

### 5.   *"retrieving the restorable representation"* (claims 1, 6, 10, 14, & 18)

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| search, locate and return the portrayal, depiction or denotation of a version, such as an image, picture, symbol, or sign that may be restored to a prior version of the file | No need for construction; plain and ordinary meaning. Alternatively, "Finding or getting an example rendering of the chosen file as it previously existed" |

Claim 1 recites the following limitation including the disputed term:

responsive to a selection to restore the selected previous version, **retrieving the restorable representation of the selected previous version** from the remote storage location and storing the selected previous version by the computational machine as the current version on the local storage station, the selected previous version available from the restorable representation of the selected previous version.

What is being accomplished here is clear: if the user selects to restore a previous version, information required to restore that previous version is retrieved, so that the computer can restore the previous version. Obviously, this can be done by "retrieving" an entire previous version of the file from the remote storage. It, however, can also be done by retrieving something other than the entire previous version of the file. For example, the claims make clear that the "restorable representation" can be other things—like, (1) an encrypted version of the file, (2) a compressed version of the file, or (3) a "delta" file, which has incremental change data between versions:

> **7.** The method of claim **1**, wherein the restorable representation of the selected previous version comprises one or more of a compressed and encrypted version of the selected previous version.
>
> **8.** The method of claim **1**, wherein the restorable representation of the selected previous version comprises an incremental change to the file.

'850 Patent, Claims 7 and 8.

### A.   *The Court Should Adopt Datanet's Construction.*

While the best construction of this term is no construction at all (*see* Ex. E, Malek Decl., at ¶ 64), alternatively, the claim term "retrieving the restorable representation of the selected previous version" should be construed to mean "Finding or getting an example rendering of the chosen file as it previously existed."[5] The use of "example" makes clear that the restorable representation does not need to include the entirety of the file being restored and can be a different file—such as an encrypted file or a compressed file or a change to the file—but one which is used to create the file to be restored "as it previously existed." "Example" or another word indicating there need not be one-to-one correspondence in content between the two files is necessary to give meaning to claims 7 and 8 which make clear that the restorable representation does not need to be an exact copy of the previous version of the file. Datanet's construction clarifies this point.

---

[5] Alternatively—as shown through Claims 7 and 8—the Court could construe this term to mean "retrieving data to restore the selected previous version."

B.     *The Court Should Reject Dropbox's Construction.*

By contrast, Dropbox's construction replaces the easily-understood verb "retrieving" with three wholly distinct and more limiting verbs "search, locate and return"—with no explanation. Dropbox is conjuring out of thin air **two additional method steps to be performed** which are nowhere to be found in the intrinsic record, the specification, or the claims. Something can be "retrieved" without searching or locating it—if you already know where it is. "While the retrieved information may have been searched previously if it had to be located, it is not always the case that retrieval requires search. Indeed, it is completely possible that the information that is retrieved is already located and therefore no search for that information is required." Ex. E, Malek Decl., at ¶ 65. Retrieving a desk lamp from my office is entirely different than searching my office for a desk lamp. Indeed, assuming I keep a tidy office, no search is even required. Why "retrieved" needs to be rewritten to include these additional claim limitations and steps is entirely unclear. Dropbox's expert is no help either. Dr. Weissman's[6] opinion is little more than the unsupported assumption that a POSITA "would understand to complete the process of 'retrieving' . . . would include searching for, locating, and returning." There is simply no explanation why retrieving is more than just returning—to the contrary, "a POSITA would not understand that a single step, retrieving, requires three other steps, searching, locating, and returning." Ex. E., Malek Decl., at ¶ 64.

Likewise, Dropbox's construction of the limitation "restorable representation" is narrower and diverges from what is taught in the specification and patent claims. Indeed, there is no support in the specification for Dropbox's construction of "portrayal, depiction or denotation of a version, such as an image, picture, symbol, or sign that may be restored to a prior version of the file." This definition is taken from the Oxford English Dictionary, with no explanation by Dropbox as to why this definition was even chosen or this dictionary consulted.

---

[6] Dr. Weissman's opinion is also fundamentally flawed in that he refused or failed to review the provisional application when forming his opinion.  (*See* Dkt. 43-4 at 7.) Datanet also objects to Dr. Weissman's opinions since he was not identified on July 12, 2023 as required under the Scheduling Order. (Dkt. 27 at 3.)

To the contrary, as shown above in the image of Claims 7 and 8, the claims make clear that the "restorable representation" can be other things—like, (1) an encrypted version of the file, (2) a compressed version of the file, or (3) a "delta" file, which has incremental change data between versions. These examples show that Dropbox's construction as an "image, picture, symbol, or sign" is just plain wrong.

## IV.   DISPUTED TERMS FOR CONSTRUCTION FROM THE '478 AND '348 PATENTS

Dropbox has identified five terms from the '478 and '348 Patents that it requests the Court construe:

1)   "temporary first storage location" ('478 Patent claims 1, & 8–11) / "first temporary storage location" ('478 Patent claims 1, & 8–11) / "temporary storage location" ('478 Patent claims 1, & 8–11; '348 Patent claims 1, 8, 12–15, 23, & 24)

2)   "intermediate storage location" ('478 Patent claim 1); '348 Patent claims 1, 8, 12–15, 27, 28, & 30)

3)   "final destination" ('478 Patent claim 1; '348 Patent claim 1)

4)   "event" ('478 Patent claims 1, & 8–11; '348 Patent claims 1, 8, 12–15, 26, & 27)

5)   "timer" ('478 Patent claims 8 & 10; '348 Patent claim 26)

Datanet is at a loss as to why Dropbox has requested the construction of these terms. Each of these terms is easily understood by a lay jury and a person of ordinary skill in the art. To the extent the Court needs to construe anything, it should suffice for the Court to construe "storage location", and allow the words "temporary", "first", and "intermediate" to all have their plain and ordinary meaning, since the Patents-In-Suit do not attach any special meaning to those terms. Based on the Parties' proposed constructions, the Parties agree that "storage location" can be construed as "a buffer, folder, directory or designated area on a storage device that can store data." The Court should adopt that construction and allow the words "temporary", "first", and "intermediate" to all have their plain and ordinary meaning. *See Smartphone Techs. LLC v. HTC Corp.,* No. 6:10-CV-580 LED-JDL, 2012 WL 12897439, at *2 (E.D. Tex. June 4, 2012) ("The

Court finds that the jury will understand the plain and ordinary meaning of the term 'first application.' Therefore, no construction is necessary.").

The final three terms likewise do not need construction. A person of ordinary skill in the art, and a lay juror, would all understand the terms "final destination", "event", and "timer." Datanet respectfully requests that the court decline Dropbox's invitation to impermissibly read limitations into these terms to narrow their scope beyond that ordinary meaning.

### 1. *"temporary first storage location" ('478 Patent claims 1, 8–11) / "first temporary storage location" ('478 Patent claims 1, 8–11) / "temporary storage location" ('478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 23, 24)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| Any storage device, buffer, folder, directory or designated area or location on a storage device that serves as the first storage location to which the archive file is temporarily moved after its creation | No need for construction; plain and ordinary meaning. Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." |

### A. *The Court Should Adopt Datanet's Construction.*

"Storage location" can be construed to mean "a buffer, folder, directory or designated area on a storage device that can store data." Indeed, the patents themselves provide that same construction:

> Storage Location—any storage device, or a buffer, folder, directory or designated area on a storage device.

'478 Patent at 4:25–26. The Court need not construe anything further. "Temporary" and "first" are words that are known to everyone and there is no need to construe such words. *Aloft Media, LLC v. Yahoo!, Inc.*, No. CIV.A. 6:08-CV-255, 2009 WL 2058661, at *7–8 (E.D. Tex. July 13, 2009) (finding that a jury would easily understand the terms "selected content" and "selected display content" and holding that no construction is necessary). In the words of the Federal Circuit, claim construction "is not an obligatory exercise in redundancy." *EmeraChem Holdings, LLC v. Volkswagen Grp. Of Am., Inc.,* 714 F. App'x 995, 997 (Fed. Cir. 2017). This Court should refrain from the redundant exercise of using eighteen words to describe "first" and "temporary."

B.    *The Court Should Reject Dropbox's Construction.*

Dropbox's proposed construction takes the agreed upon definition of "storage location" and then destroys all agreement by appending an additional eighteen words which have no basis in the claim or specification: "that serves as the first storage location to which the archive file is temporarily moved after its creation." To the extent that the "temporary first storage location" may or may not serve as the "first storage location to which the archive file is temporarily moved after its creation" is defined by the ***other*** terms of the claim, there is no need to read all of that into this claim term. Indeed, by incorporating all that language into this claim term, Dropbox is entirely re-writing the claim and replacing actual claim limitations with Dropbox's preferred language. Specifically, Dropbox has re-written the term to encompass no less than three other parts of the claim limitations "creating an archive file", "storing the archive file", and "temporally proximate":

> **creating an archive file** from the operating file and **storing the archive file** in a temporary first storage location **temporally proximate** to the operation being performed on the operating file and responsive to detecting the instruction;

This is completely improper and should be rejected by the Court. As the Federal Circuit stated decades ago in *Phillips*, "use of a term within the claim provides a firm basis for construing the term." *Phillips*, 415 F.3d at 1314. In *Phillips* the Court concluded that the use of the phrase "steel baffles" implied that not all baffles were necessarily made out of steel. *Id.* The same approach applies here. Given that other parts of the claim language concern creating an archive file, storing the archive file, and the timing of performing these actions, it cannot be that the claim term "temporary first storage location" again restates these steps and also includes the entire clause "to which the archive file is temporarily moved after its creation."

It is also inappropriate to read into this claim a temporal "order" using the word "first." "As we have previously held, '[t]he use of the terms 'first' and 'second' is a common patent-law convention to distinguish between repeated instances of an element or limitation.'" *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005) (vacating summary judgment of noninfringement because district court erred in its construction of several claim

limitations); *Gillette Co. v. Energizer Holdings, Inc*., 405 F.3d 1367, 1373 (Fed. Cir. 2005) ("The terms 'first, second, and third' are terms to distinguish different elements of the claim, not terms supplying a numerical limit. Thus, the 'first,' 'second,' and 'third' blades need not necessarily appear in that order or necessarily limit the blade unit to only three blades."). Finally, Dropbox's contention that "first" must be read into "temporary storage location" when it does not include the word "first" is also unsupported by any law or logic.

**2.    "intermediate storage location" ('478 Patent claim 1); ('348 Patent claims 1, 8, 12–15, 27, 28, 30)**

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| Any storage device, buffer, folder, directory or designated area or location on a storage device that is a non-permanent storage location to which the archive file is moved after the first temporary storage location and before a final destination. | No need for construction; plain and ordinary meaning.  Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." |

*A.    The Court Should Adopt Datanet's Construction.*

The same analysis should guide the Court for "intermediate storage location." "Storage location" can be construed to mean "a buffer, folder, directory or designated area on a storage device that can store data." Indeed, the patents themselves provide that same construction:

> Storage Location—any storage device, or a buffer, folder, directory or designated area on a storage device.

'478 Patent at 4:25–26. The Court need not construe anything further. "Intermediate" is a word that is known to everyone and there is no need to construe such words. In the words of the Federal Circuit, claim construction "is not an obligatory exercise in redundancy." *EmeraChem,* 714 F. App'x at 997. And this Court should refrain from the redundant exercise of using **forty** words when one—"intermediate"—will do.

*B.    The Court Should Reject Dropbox's Construction.*

Like with "temporary first storage location", Dropbox's attempt to completely re-define the well-understood three-word phrase with an unclear forty-word definition should be rejected.

Indeed, the proposed construction continues to add elements that are not in the claims and not part of the meaning of "intermediate" exactly as Dropbox sought to do with "temporary first storage location." For example, Dropbox reads in a mandatory order which is not found in the meaning of "intermediate" and which is the subject of entirely different claim limitations. For example, the steps of "moving" the file are included in *other* claim limitations. Dropbox's attempt to pull them into this definition by including "to which the archive file is moved after the first temporary storage location and before a final destination" is improper and wrong. So is Dropbox's attempt to require movement of the file to a "final destination" which is not found anywhere in the '478 Patent's Claim 1. To the contrary, Claim 1 of the '478 Patent merely requires "determining a final destination for the archive file"—but then only requires "moving the archive file to the **second storage location.**" This second storage location may or may not be the final destination. Dropbox's construction, however, impermissibly reads moving the file to a final destination into the claim.

### 3. *"final destination" ('478 Patent claim 1; '348 Patent claim 1)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| A location to which the archive file is last moved | No need for construction; plain and ordinary meaning. Alternatively, "Any storage device or a buffer, folder, directory or designated area on a storage device that can store data" |

#### A. *The Court Should Adopt Datanet's Construction.*

There is no need to construe "final destination." A lay juror can easily understand "final destination." *See Aloft Media,* 2009 WL 2058661, at *7–8 (finding that a jury would easily understand the terms "selected content" and "selected display content" and holding that no construction is necessary). To the extent the Court wants to construe "final destination" it should be construed the same as any of the other "storage locations", that is as "any storage device or a buffer, folder, directory or designated area on a storage device that can store data."

#### B. *The Court Should Reject Dropbox's Construction.*

As discussed above, Dropbox's proposed construction requires movement of the file to a "final destination." This movement to a final destination is not found anywhere in the '478 Patent's

Claim 1. To the contrary, Claim 1 of the '478 Patent merely requires "determining a final destination for the archive file"—but then only requires "moving the archive file to the **second storage location.**" This second storage location may or may not be the final destination. Dropbox's construction, however, impermissibly reads moving the file to a final destination into the claim. Nowhere in the claim does it state that the archive must be moved to the "final destination" for the claim to be infringed. Thus, Dropbox's construction for "final destination" of "a location to which the archive file is last moved" is flatly wrong.

### 4. *"event" ('478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 26, 27)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| a triggering notification or message about a storage device status or the status of an operation performed on a file | No need for construction; plain and ordinary meaning. Alternatively, "happening." |

A person of ordinary skill in the art knows what a computer "event" is. *See* Ex. E, Malek Decl., at ¶¶ 68, 71–73. There is no need for the Court to construe this term. *Id.* To the extent the Court wants to construe this term, it should be given its everyday meaning—i.e., "happening." An event is a "happening" or an occurrence. This is consistent with a computer dictionary from 1998—when the claimed invention was invented—which defined "event" as:

> **event** *n.* An action or occurrence, often generated by the user, to which a program might respond—for example, a key press, a button click, or a mouse movement. *See also* event-driven programming.

Ex. E, Malek Decl., at ¶¶ 71.[7] An "event" can include "a message from a timer," or "a message indicating when the second storage location is available." '478 Patent at Claims 8–10; '348 Patent at Claims 12–13 and 26–27. But it is not limited to those things. The Patents describe the entire backup procedure as an "event." '478 Patent at 2:56–59 ("there is a need for a file capture, preservation and management system . . . to minimize loss of data between backup events.") And

---

[7] While the parties were meeting-and-conferring about claim construction, Datanet proposed adopting this dictionary definition and construing the term "event" as "An action or occurrence to which a program might respond." Dropbox did not respond to this offer.

the Patents describe happenings or occurrences in the process as "events." '478 Patent at 3:60–67 ("FIG. 3 is a time line illustrating a **sequence of events in an exemplary operation** in accordance with the invention. FIG 4 is a time line illustrating a **sequence of events in another exemplary operation** in accordance with the invention. FIG 5 is a time line illustrating a **sequence of events in still another exemplary operation** in accordance with the invention." (emphasis added)).

### A.   *The Court Should Adopt Datanet's Construction.*

As described above, the usage of "event" throughout the specifications, as well as the Microsoft dictionary, are all consistent with Datanet's proposed construction of "event" as "happenings" or, alternatively, as "an action or occurrence to which a program might respond," as proposed by Datanet to Dropbox. As a result, the Court should adopt one of those constructions.

### B.   *The Court Should Reject Dropbox's Construction.*

By contrast, Dropbox's construction of "event" breaks the cardinal rule of claim construction—it imports into the claims limitations from the specification. *See Varco, L.P. v. Pason Sys., USA Corp.,* 436 F.3d 1368, 1373 (Fed. Cir. 2006) ("[T]his court will not at any time import limitations from the specification into the claims."); *Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002). For example, there is no reason an event should be limited to "a triggering notification or message" or that something is only an "event" if it is a message "about a storage device status or the status of an operation performed on a file." None of these limitations are in the claims themselves. Dropbox and its expert, Dr. Weissman, highlight "[e]xemplary events" described in the specification—refusing to understand that they are "just that, exemplary, and not the only events." Ex. E, Malek Decl., at ¶ 69. Indeed, "FIG. 4 . . . of the '478 and '348 Patents illustrates 'a sequence of events' (exemplary operation) that does not include a 'triggering notification', as Dropbox proposes." *Id.* Limiting claims to the "examples" in the specification is a practice the Federal Circuit has repeatedly warned against. *Vulcan*, 278 F.3d at 1376 ("This court has often explained that the claims are construed in light of the specification, and are not limited to a designated 'preferred embodiment'.").

### 5.    *"timer" ('478 Patent claims 8 & 10; '348 Patent claim 26)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| device or component that measures and reports time intervals | No need for construction; plain and ordinary meaning. Alternatively, "a mechanism, control device, or software that can count, record or indicate time or intervals" |

Like "event", a person of ordinary skill in the art knows what a "timer" is. *See* Ex. E, Malek Decl., at ¶ 77. There is no need for the Court to construe this term. *Id.* To the extent a court wants to construe this term, it should be given its everyday meaning—i.e., a mechanism, control device, or software that can count, record or indicate time or intervals.

#### A.    *The Court Should Adopt Datanet's Construction.*

The teachings of the specification all support Datanet's construction—and what would be obvious to a person of ordinary skill in the art—*vis., that* the inventors were not using "timer" in any sort of novel way. Instead, "timer" is accorded its plain and ordinary meaning, which a POSITA and a lay jury would be more than familiar with. *See* Ex. E, Malek Decl., at ¶ 77. This understanding of "timer" is "a mechanism, control device, or software that can count, record or indicate time or intervals", as proposed by Datanet. *Id.*

#### B.    *The Court Should Reject Dropbox's Construction.*

Dropbox's proposed construction seeks to import unnecessary limitations into the term "timer" which are unwarranted and not found in the claims. For example, Dropbox limits a timer to a "device or component"—why the "timer" cannot be software is completely unexplained by Dropbox and not supported by the specification. Likewise, Dropbox requires that for something to be a "timer" it must "report time intervals." That is not supported by the specification. For example, a timer that reported the time would no longer be a timer under Dropbox's proposed construction because it did not "report time ***intervals***." None of this language is supported by the specification and should be rejected by the Court.

## V.    ADDITIONAL TERM FOR CONSTRUCTION

Datanet identifies a single additional term for construction: "archive file."

1.    *"archive file"* (*'478 Patent claims 1, 8–11; '348 Patent claims 1, 8, 12–15, 20, &*
*26)*

| Dropbox's Proposed Construction | Datanet's Proposed Construction |
|---|---|
| "A file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file." | "1) one or more files containing all of the data of an operating file in a native or altered format and/or 2) one or more files containing at least some of the data of an operating file in a native or altered format [with or without][8] references to the location of the remainder of the native or altered data of the operating file." |

The specification of the patents defines "archive file" as:

> Archive File—a file containing all of the data of an operating file in a native or
> altered format and/or a file containing at least some of the data of an operating file
> and including references to the location of the remainder of the data of the operating
> file.

Ex. B, '348 Patent, at 4:16–21. Since a patentee can serve as their own lexicographer, Datanet has

started with the definition offered by the patentee as a base for its proposal. Datanet has slightly

modified this definition to fit with the demands of patent law. *First*, "a" in the definition has been

replaced with "one or more." This is due to the patent law requirement that the indefinite article

"a" means "one or more." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed.

Cir. 2008) ("That 'a' or 'an' can mean 'one or more' is best described as a rule, rather than merely

as a presumption or even a convention."); *see also Altiris*, 218 F.3d at 1373–74.

*Second,* Datanet's construction includes "in a native or altered format" under the second

option. This was done to make clear that definition provided does not in any way suggest that the

data can only be stored "in a native or altered format" if it is in files containing "all" rather than

just "some" of the data. This is consistent with what is expressed in Claims 15, 20, and 22 of the

'348 Patent. Claims 15 and 20 make clear that the "archive file" described in Claim 15 can contain

---

[8] When the parties exchanged proposed constructions, Datanet proposed the definition
included in the specification of the '348 Patent at lines 4:16–21 with "a" appropriately replaced
with "one or more." The relevant claim limitations, however, provide additional information about
"archive file" and Datanet has modified its construction to replace "and including" with "with or
without" to conform its construction to what is taught in Claims 20–22.

less than all the operating file and need only contain "some data of the operating file." Claim 22 then makes clear that that same "archive file" from Claim 15 can also be in "one or a combination of a native format and an altered format."

> **20**. The method of claim **15**, wherein the archive file comprises at least some data of the operating file.
> **21**. The method of claim **20**, wherein the archive file further comprises a reference to a location of a remainder of the data of the operating file.
> **22**. The method of claim **15**, wherein the archive file comprises data of the operating file in one or a combination of a native format and an altered format.

Ex. B, '348 Patent, at Claims 20–22.

The final modification was to make clear what is taught in Claims 15, 20, and 21. Namely, that an archive file with some of the data does *can* but does *not need* to have a reference to the remainder of the data. This is clear from the above claims because Claim 20 makes clear that the archive file from Claim 15 can be a file that contains "at least some of the date of the operating file." Since Claim 21 is dependent on Claim 20, it *adds* a limitation—meaning that the archive file of claim 15 which "comprises at least some data of the operating file", *can but is not required to* also comprise "a reference to a location of a remainder of the data."

To summarize Datanet urges the Court to adopt a construction that is consistent with the dependent claims, controlling patent law, and the inventor's statement in the specification. The only proposed construction which does this is Datanet's proposal: "1) one or more files containing all of the data of an operating file in a native or altered format and/or 2) one or more files containing at least some of the date of an operating file in a native or altered format [with or without] references to the location of the remainder of the native or altered data of the operating file."

## VI.   CONCLUSION

For the reasons stated above, Datanet respectfully requests that the Court adopt its proposed constructions.

DATED: August 16, 2023

/s/ Isaac S. Crum
Alden G. Harris
State Bar No. 24083138
aharris@hpcllp.com
Heim Payne & Chorush, LLP
1111 Bagby St., Suite 2100
Houston, Texas 77002
Telephone: (713) 221-2000
Facsimile: (713) 221-2021

Gregory P. Sitrick (*pro hac vice*)
Isaac S. Crum (*pro hac vice*)
Messner Reeves LLP
7250 N. 16th St., Suite 410
Phoenix, Arizona 85020
Telephone: (602) 457-5059
Facsimile: (303) 623-0552
gsitrick@messner.com
icrum@messner.com

ATTORNEYS     FOR     PLAINTIFF
DATANET LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney certifies that on the 16th day of August, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel on record in the matter.

*/s/ Isaac S. Crum*
Isaac S. Crum
