**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**



**CLAIM CONSTRUCTION ORDER AND MEMORANDUM IN SUPPORT THEREOF**

Before the Court are the Parties' claim construction briefs: Defendant Dropbox, Inc.'s Opening Claim Construction Brief (ECF No. 43), Plaintiff's Datanet LLC's Responsive Claim Construction Brief (ECF No. 60), Defendant's Reply Claim Construction Brief (ECF No. 63), Plaintiff's Sur-Reply Claim Construction Brief (ECF No. 69), and the parties' Joint Claim Construction Statement (ECF No. 72).

The Court provided preliminary constructions for the disputed terms one day before the hearing. The Court held the *Markman* hearing on November 2, 2023. ECF No. 85. During that hearing, the Court informed the Parties of the final constructions for the disputed terms. *Id.* This Order does not alter any of those constructions.

## I.   DESCRIPTION OF THE ASSERTED PATENTS

Datanet asserts U.S. Patent Nos. 10,585,850, 8,473,478, and 9,218,348. All three patents are part of the same patent family. Opening at 1. The parties divide the patents into two groups; the '850 Patent into one group and the '478 and '348 Patents into another group. *Id.* at 1–2; Response at 4–6.

## A.  The '850 Patent

The '850 Patent is entitled "Automatic real-time file management method and apparatus" and is directed towards "[a] method of restoring a file to a previous version of the file, where a current version of the file [is] available at a local storage location."  '850 Patent at Abstract.  The claimed invention in the '850 Patent includes the ability to preview other versions of the same file and choose which previous version to restore.  *Id.*, Claim 1; *see also id.* at Abstract.  Claim 1, which is exemplary, discloses three primary method steps: (A) "presenting information for a collection of one or more previous versions of the file," wherein the collection of the previous versions of the file are stored in a remote storage location and where the current version is in a local storage location, (B) previewing a selected previous version, and (C) restoring the selected previous version as the current version on local storage location.

## B.  The '478 and '348 Patents

The '478 and '348 Patents are both entitled "Automatic real-time file management method and apparatus" and are both directed towards a method for archiving files.  '478 Patent at Abstract, '348 Patent at Abstract.  The Patents describe that one "object of the invention is to provide a file capture, preservation and management method and apparatus that captures and stores files even when the desired storage location is unavailable."  '478 Patent at 3:14–17, '348 Patent at 3:16–20.  The Patents also describe that "another object of the invention [is] to provide a file capture, preservation and management method and apparatus that has an imperceptible impact on system performance from the user's point of view."  '478 Patent at 3:10–13, '348 Patent at 3:12–15.

## II.   LEGAL STANDARD

### A.  General principles

The general rule is that claim terms are generally given their plain-and-ordinary meaning. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (*en banc*); *Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014), *vacated on other grounds*, 575 U.S. 959, 959 (2015) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.") (internal quotation omitted).  The plain-and-ordinary meaning of a term is the "meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Phillips*, 415 F.3d at 1313.

The "only two exceptions to [the] general rule" that claim terms are construed according to their plain-and-ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution. *Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012).  The Federal Circuit has counseled that "[t]he standards for finding lexicography and disavowal are exacting." *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014).  To act as his/her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "'clearly express an intent' to [define] the term." *Thorner,* 669 F.3d at 1365.

"Like the specification, the prosecution history provides evidence of how the PTO and the inventor understood the patent." *Phillips*, 415 F.3d at 1317. "[D]istinguishing the claimed invention over the prior art, an applicant is indicating what a claim does not cover." *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1379 (Fed. Cir. 1998). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed.

Cir. 2003). "[F]or prosecution disclaimer to attach, our precedent requires that the alleged disavowing actions or statements made during prosecution be both clear and unmistakable." *Id.* at 1325–26. Accordingly, when "an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

A construction of "plain and ordinary meaning" may be inadequate when a term has more than one "ordinary" meaning or when reliance on a term's "ordinary" meaning does not resolve the parties' dispute. *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1361 (Fed. Cir. 2008). In that case, the Court must describe what the plain-and-ordinary meaning is. *Id.*

"Although the specification may aid the court in interpreting the meaning of disputed claim language . . ., particular embodiments and examples appearing in the specification will not generally be read into the claims." *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988). "[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining 'the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)). Technical dictionaries may be helpful, but they may also provide definitions that are too broad or not indicative of how the term is used in the patent. *Id.* at 1318. Expert testimony may also be helpful, but an expert's conclusory or unsupported assertions as to the meaning of a term are not. *Id.*

### B.  Claim differentiation

Under the doctrine of claim differentiation, a court presumes that each claim in a patent has a different scope.  *Phillips*, 415 F.3d at 1314–15.  The presumption is rebutted when, for example, the "construction of an independent claim leads to a clear conclusion inconsistent with a dependent claim."  *Id.*  The presumption is also rebutted when there is a "contrary construction dictated by the written description or prosecution history."  *Seachange Int'l., Inc. v. C-COR, Inc.*, 413 F.3d 1361, 1369 (Fed. Cir. 2005).  The presumption does not apply if it serves to broaden the claims beyond their meaning in light of the specification.  *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1326 (Fed. Cir. 2017).

### C.  Indefiniteness

"[I]ndefiniteness is a question of law and in effect part of claim construction."  *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012).  Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  If it does not, the claim fails § 112, ¶ 2 and is therefore invalid as indefinite.  *Id.* at 901.  Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed.  *Id.* at 911.  Indefiniteness requires clear-and-convincing evidence.  *Sonix Tech. Co., Ltd. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).

### D.  Order of method steps

When analyzing whether an order exists between steps of method claim, the presumption is that limitations may be performed in any order. *Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363,

1369 (Fed. Cir. 2003). Courts first look at the "claim language to determine if, as a matter of logic or grammar, they must be performed in the order written" and, if not, whether the specification "directly or implicitly requires such a narrow construction." *Id.* at 1369–70.

## III.    LEGAL ANALYSIS

### A.  Term #1: "responsive to a selection to not restoring the previous version"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #1: "responsive to a selection to not restoring the previous version"<br><br>U.S. Patent No. 10,585,850, Claims 6, 14<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Responding to an input (such as, for example but not limited to, clicking on another version, or clicking on a 'cancel,' or interacting with some other input/element) that the user does not wish to restore the earlier version it selected for preview." | Indefinite.<br><br>Dropbox disagrees with Datanet's alternative proposed construction. |

**The Parties' Positions:**

Dropbox contends that dependent Claims 6 and 14 are indefinite because they recite limitations are that incompatible with limitations in independent Claims 1 and 10, respectively. Opening at 4.  More specifically, Dropbox contends that independent Claims 1 and 10 recite "retrieving the restorable representation of the selected previous version" where the step is "responsive to a selection to restore the selected previous version" while dependent Claims 6 and 14 recite "presenting a second presentable representation of the selected second previous version" that is "responsive to a selection of not restoring the previous version." *Id.*  As such, at least according to Dropbox, dependent "claims 6 and 14 require (i) claim 1 and 10's 'selection to restore

the selected previous version' (and corresponding 'retrieving' and 'storing' processes) by virtue of its dependency on claims 1 and 10, *and* (ii) that the same selection not occur by virtue of their additional limitations."  *Id.* (emphasis in Dropbox's brief).  In other words, Dropbox asserts that dependent Claims 6 and 14 recite both a selection "**to restore**" the selected previous version (via independent Claims 1 and 10) and "a selection **to *not* restoring** the previous version[.]"  *Id.* (emphasis in Dropbox's brief).

Dropbox contends that Datanet's alternative proposed construction "rewrites the plain language of claims 6 and 14 from requiring certain steps be performed 'responsive to a selection of not restoring the previous version' to requiring that certain steps be performed in response to 'an input…that the user does not wish to restore the earlier version it selected for preview.'"  *Id.* at 5.  Dropbox contends that Datanet's alternative proposed construction "reads out the claim's 'selection' requirement, replacing it with a 'wish.'"  *Id.*  Dropbox further contends that Datanet's alternative proposed construction changes the meaning of the claims from requiring that all limitations in independent Claims 1 and 10 and dependent Claims 6 and 14 must be met to only requiring that "dependent claims 6 and 14's limitations be satisfied *instead of* claims 1 and 10's."  *Id.* (emphasis in Dropbox's brief).

In its response, Datanet contends that the claims do not require that performing method steps that are "responsive to a selection to restore the selected previous version" and "responsive to a selection to not restoring the previous version" as Dropbox argues.  Response at 7.  Rather, Datanet contends that "[a] user can (pre)view and restore multiple times across various versions of files. A user might first select to restore a first version, but, on second thought, decide not to restore that version but to view and restore a different version."  *Id.*  Datanet contends that the provisional application depicts user interface windows where the "a user could select to not restore

a previous version, by choosing another version or selecting 'close.'" *Id.* (citing Response, Ex. D at DATA001477). Datanet contends that rather than being indefinite, dependent Claims 6 and 14 "require[] the performance of additional method steps for infringement: namely, the selection not to restore the previous version but instead to restore a second previous version." *Id.*

Datanet contends that it "makes no sense to interpret the dependent claims in this case as mandating the concurrent selection of both 'restoring' and 'not restoring' previous versions of a file. These are method steps. All that is required is that they each be performed—not that they be performed simultaneously[.]" *Id.* Datanet contends that its expert opined that a POSITA would understand that the limitations do not need to be performed simultaneously, but only need to be performed. *Id.* (citing Response, Ex. E at ¶¶ 41, 43).

Datanet contends that its alternative proposed construction could assist the jury and is "entirely consistent with the diagrams in the intrinsic record which show a user being able to 'view' versions and then choose to 'restore' or alternatively choose a different version or to click 'close' and not restore the previous version," as depicted in the provisional application. *Id.* at 8 (citing Response, Ex. D at DATA001477).

In its reply, Dropbox contends that Datanet is "attempting to effectively read out [to restore the selected previous version in the independent claims] from the dependent claims to preserve validity." Reply at 1 (citing *Allen Eng'g Corp. v. Bartell Indus., Inc.*, 299 F.3d 1336, 1349 (Fed. Cir. 2002)). Dropbox contends that the user interface pictures Datanet cited from the provisional application do not show "to restore the selected previous version" in the independent claims. *Id.* at 1–2. In particular, Dropbox contends that "[a] user's selection of the 'Close' button instead of the 'Restore' option results in a selection 'to not restor[e] the previous version" as recited in claim 6(B2)," but not a restoration of the first selected version as required by Claim 1(C). *Id.* at 8.

Dropbox contends that Datanet's alternative proposed construction adds ambiguity while improperly inserting new term, *e.g.*, "earlier version" and "another version." *Id.* Dropbox contends that it also "injects a user's state of mind by reading out the 'selection' requirement and replacing it with a 'wish.'" *Id.*

In its sur-reply, Datanet contends that Dropbox "ignore the fact that, as explained in Datanet's Opening Brief, a user can restore or not restore a single file multiple times and, by so doing, accomplish the method steps articulated in Claims 6 and 14." Sur-Reply at 1. As an example, Datanet argues that:

> Imagine the scenario where Claim 1 is practiced by Dropbox's software such that it: (1) presents information from previous version(s), (2) has a retrievable version on remote storage, (3) the previous version is selected, (4) information about the previous version is presented, (5) a restorable representation is retrieved, and (6) the previous version is stored as current version on the local machine. Then, imagine the user then decides they want a ***different*** version. The software then accomplishes the additional steps in Claim 6 or 14: Allowing the user to review previous versions, allowing the user to determine to not to restore that version but instead restore a different version, presenting information about that second version, retrieving the restorable representation of that version and storing it as the current version. There is nothing indefinite about this method of practicing Claims 1 and 6.

*Id.* at 1–2 (emphasis in Datanet's brief, internal citations omitted).

Datanet contends that Dropbox's entire indefiniteness argument was "invented out of whole cloth by Dropbox by reading in a limitation that 'only one restoration takes place." *Id.* Datanet contends that Dropbox did not respond to this argument in its Reply brief. *Id.*

**The Court's Analysis:**

Claims 1 and 6, which are similar to Claims 10 and 14, provide:

1.  A method of restoring a file to a previous version of the file, a current version of the file being available at a local storage location, comprising the steps of:

(A)     presenting information for a collection of one or more previous versions of the file, the information for the collection including information indicative of at least one or more of previous versions of the file, wherein a restorable representation of each version, V, of the previous versions, is retrievable from a remote storage location, the restorable representation having at least information required for recovering the version V by a computational machine with the current version being accessible, the remote storage location being accessible through a network;

(B)     responsive to a selection to preview a selected previous version of the file based on the presented information for the collection of (A), presenting a presentable representation of the selected previous version, the selected previous version being one of the previous versions of the file in the presented information for the collection, the presentable representation having at least information required for presenting at least a portion of the selected previous version by the computation machine with the current version being accessible; and

(C)     responsive to a selection to restore the selected previous version, retrieving the restorable representation of the selected previous version from the remote storage location and storing the selected previous version by the computational machine as the current version on the local storage location, the selected previous version available from the restorable representation of the selected previous version.

6. The method of claim 1, further comprising the steps of:

(B2)     after the presenting of (B) and responsive to a selection to not restoring the previous version and responsive to a second selection of a second previous version of the previous versions, version presenting a second presentable representation of the selected second previous version, the second presentable representation having at least information required for presenting at least a portion of the selected previous version; and

(C2)     responsive to a selection to restore the second selected previous version, retrieving the restorable representation of the second selected previous version from the remote storage location and storing the second selected previous version as the current version on the local storage location, the second selected previous version available from the restorable representation of the second selected previous version.

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that the term is not indefinite due to a lack of clear and convincing evidence. *Sonix Tech.*, 844 F.3d at 1377. The Court agrees with Datanet that the claims do not require simultaneously restoring and not restoring a file as Dropbox's argument appears to assume. Furthermore, the claims do not require that only one restoration takes place. By contrast, the

claims allow for the possibility that a user can restore a single file multiple times.  For example, independent Claims 1 and 10 allow for a previous version of the file to be selected, previewed, and retrieved while the limitations in dependent Claims 6 and 14 allow for a second previous version of the file to be selected, previewed, and retrieved.  As such, in combination with their associated independent claims, dependent Claims 6 and 14 allow a user to preview and restore a file multiple times using multiple previous versions of the file, where the first preview and restoration occurs in independent Claims 1 and 10 and where the second preview and restoration occurs in dependent Claims 6 and 14.  Based on this understanding, the Court concludes there is not clear and convincing evidence that a POSITA would not understand with at least reasonable certainty the scope of this claim term.  As such, the claim term is not indefinite.

*Construction*: Because the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning and because Dropbox does not allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning, the Court concludes that the term should be construed as having its plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347; *Thorner*, 669 F.3d at 1365.

With respect to Datanet's alternative proposed construction, the Court concludes that it, at best, unnecessarily paraphrases the claim term.  *C.R. Bard*, 388 F.3d at 863 (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted).  At worst, Datanet's alternative proposed construction improperly construes "selection" to mean "wish," which is inconsistent with its plain-and-ordinary meaning..  *Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005)

11

("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998)).

Therefore, for the reasons described above, the Court finds that the term is not indefinite and should be construed according to its plain-and-ordinary meaning.

**B. Term #2: "storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location"**

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #2: "storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location" <br><br> U.S. Patent No. 10,585,850, Claims 1, 6, 10, 14, 18 <br><br> Proposed by Dropbox | No need for construction; plain and ordinary meaning. <br><br> Alternatively, "Saving the earlier version of the file … as the most recent version of the file / saving the second chosen earlier version of the file … as the most recent version of the file. | Plain and ordinary meaning. <br><br> Dropbox disagrees with Datanet's alternative proposed construction. |

**The Parties' Positions:**

The parties agree that the term should be construed according to its plain-and-ordinary meaning, but disagree as to what is the "current version." *See, e.g.*, Opening at 7–8, Response at 9-11.  In particular, the parties dispute whether the "current version " refers to the "most recent version."

Dropbox contends that replacing "the current version" with "the most recent version," as recited in Datanet's alternative proposed construction, changes the claim scope.  Opening at 7. More specifically, Dropbox contends that Datanet's alternative proposed construction creates a

new current version of the file instead of replacing the current version of the file.  *Id.* at 8.  In addition, Dropbox contends that Datanet's alternative proposed construction ignores the claim language.  *Id.*  More specifically, Dropbox contends that the phrase "the current version" in the claim refers back to "a current version" earlier in the claim, which indicates that "the current version" must be the same file as the file for "a current version."  *Id.*

In its response, Datanet contends that Dropbox incorrectly argues that the plain-and-ordinary meaning of the claim language requires that the selected previous version must overwrite the file that corresponds to the current version.  Response at 9.  Datanet contends that the "language in the Provisional [application] makes it clear that what is contemplated is the saving of the 'current version' and then the restoration to create a new 'current version.'"  *Id.* at 10 (citing Response, Ex. D at DATA00171516 ("sav[ing] the existing file (if it needs to!) before writing it with the copy the user is about to restore.")).  Datanet further contends that "[n]owhere in the specification, claims, or provisional is there any suggestion let alone a requirement that [the newest version of the file] as it existed before this method was performed is no longer stored on the local storage location" as Dropbox argues;" rather, the claims are silent whether or not this file may or may not also be saved on the local storage location.  *Id.*

Datanet contends that Dropbox's argument is "nothing more than mere semantic sophistry—when a version is restored, it is the most recent version of the document, and ***it becomes the current version.***"  *Id.*  Datanet further contends that Dropbox's argument "that the previous current version must be removed from the local device—makes no sense at all and, as shown above is directly at odds with the intrinsic evidence."  *Id.*

Datanet contends that its alternative proposed construction is consistent with the disclosures in the provisional application and that its expert opines a POSITA would understand that its alternative proposed construction is the correct interpretation. *Id.* at 11.

In its reply, Dropbox contends that Datanet's alternative proposed construction "misconstrues and re-writes the claim language." Reply at 2. In particular, Dropbox contends that Datanet's alternative proposed construction ignores that, due to the antecedent relationship between "as the current version" and "as a current version," the claims require that the selected previous file must overwrite the current file. *Id.* at 3. But Dropbox contends that Datanet's alternative proposed construction would allow that the selected previous file does not overwrite the current file, but rather can be written as a new file. *Id.*

Dropbox contends that the provisional application supports its position and not Datanet's. *Id.* More specifically, Dropbox contends that the provisional application describes that

> before overwriting a file (e.g., [version 5]), the system checks whether the file name of the restored file will overwrite a file that is not "on the top level of the AccuSafe revision 'stack'" (e.g., that is not the current version). If a file that is not the current version (e.g., [version 3]) will be overwritten, the system backs up that [version 3] file so as not to lose [version 3].

*Id.* (quoting Response, Ex. D at DATA00171516) (internal citations omitted).

Dropbox contends that Datanet's alternative proposed construction also improperly introduces new terms, *e.g.*, "earlier version" and "most recent version," that have no basis in the claim language.

In its sur-reply, Datanet contends that Dropbox's arguments unnecessarily use file version numbers, rather than using the "current" language in the claims. Sur-Reply at 2. Datanet contends that "[i]f a user saves a file and then ten minutes later saves that same file again, the latest save is the 'current' version—regardless of whether that is version 1, 2, or 10." *Id.* Datanet contends that

Dropbox incorrectly argues that the current version is fixed to a particular version, *e.g.*, version 5, and "could never be the current [version 6] being worked on." *Id.* at 3. Datanet contends that, rather, "by its very nature the 'current' version is subject to change as additional steps are performed." *Id.*

Datanet contends that had the inventor wanted to limit the claim scope in the manner argued by Dropbox, the inventor did not need to include the words "as the current version" in the claim language. *Id.* Datanet contends that the patentee chose the word "current" to "make[] clear that it is not a static file or version." *Id.*

Finally, Datanet contends that the claims are silent on whether the existing "current" version must be overwritten. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, neither party alleges lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365. ***Third***, the parties agree that the term should be construed according to its plain-and-ordinary meaning. Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

The Court does not believe that it is necessary to provide a clarification as to the plain-and-ordinary meaning or that the meaning of "current version" is unclear for the reasons that follow.

***First***, the claims are silent on whether the current version must be overwritten.  In particular, the claims describe that there are one or more previous versions of the file.  *See, e.g.*, '850 Patent, Claim1, Limitation (A) ("presenting information for ***a collection of one or more previous versions of the file***…") (emphasis added).   The claims also describe "storing the selected previous version…as the current version on the local storage."  '850 Patent, Claim1, Limitation (C).  Given that, had the patentee intended to overwrite the current version of the file, the patentee could have written the claims to require "storing the selected previous version…by ***overwriting*** the current version on the local storage."   But because the claims only describe "storing" and not "overwriting," requiring that restoring a previous version of the file must overwrite the current version rewrites the claims.

***Second***, the Court agrees with Datanet that Dropbox incorrectly argues that the current version is fixed to a particular version, *e.g.*, version 5.  Rather, the term "current version" only appears to be label that describes the most recent file being changed.  Therefore, because the term "current version" is not fixed to a particular version, but rather is a label that may point to different versions (akin to how a pointer in computing programming points to a memory location, but is itself not a memory location that stores data (apart from storing the memory address that it points to)), the Court concludes that Dropbox's antecedent basis argument does not require construing the "current version" to mean a specific version.

***Third***, overwriting the current version of the file with a previous version might undermine the purpose of the invention.  More specifically, the specification describes that data loss is a significant challenge and one that may have a substantial impact.  *See, e.g.*, '850 Patent at 1:28–31 ("Complicating the problem is the fact that the critically of data is increasing and the difficulty of managing it, ***protecting it from loss and keeping it available is increasing***.") (emphasis added).

Interpreting the "current version" to be a specific version of the file, *e.g.*, version 5, could result in data loss—by overwriting a specific version of the file with a previous version, *e.g.,* overwriting version 5 with version 2—which is a goal that the patent is attempting to avoid.  As such, the Court concludes that current version is not associated with a specific version, but rather is a label for the most recent version.

> **Fourth**, the intrinsic record describes that the current version of the file is not overwritten. More specifically, the provision application describes "sav[ing] the existing file … before writing it with the copy the user is about to restore."  Response, Ex. D at DATA00171516.

### C.  Term #3: "substantially imperceptible impact…from a user's point of view"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #3: "substantially imperceptible impact…from a user's point of view"<br><br>U.S. Patent No. 10,585,850, Claims 9, 17.<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "computing device performance is not affected perceivably by the user." | Indefinite.<br><br>Dropbox disagrees with Datanet's alternative proposed construction. |

**The Parties' Positions:**

> Dropbox contends that the term is indefinite because what is "substantially imperceptible" depends on the "unpredictable vagaries of any one person's opinion."  Opening at 9 (quoting *Intell. Ventures I LLC v. T-Mobile USA, Inc.*, 902 F.3d 1372, 1381 (Fed. Cir. 2018)).  Dropbox contends that the specification does not provide any objective guidance, but either only recites that the invention has an "imperceptible impact" ('850 Patent at 3:18–21) and that "momentarily delaying the execution of step 215 in such a manner as to have little or no perceptible impact on system performance from the users point of view" ('850 Patent at 7:25–28).  *Id.* at 9–10.  But Dropbox

contends that neither of these passages provide guidance as to what constitutes a "substantially imperceptible" impact. *Id.* at 10.

In addition to user variability, Dropbox contends that there is system-to-system variability, *e.g.*, faster and slower computers. *Id.*

Dropbox contends that Datanet's alternative proposed construction is incorrect for at least two reasons. *Id.* at 11. First, Dropbox contends that it impermissible writes out the word "substantially." *Id.* Second, Dropbox contends that it "does not provide any parameters on what system performance factors are perceived by the user, or to what degree system performance would need to be impacted to be 'perceivably' affected." *Id.*

In its response, Datanet contends that "this aspect of the claim is fully disclosed in the specification[.]" Response at 11 (citing '850 Patent at 7:25–28 ([s]tep 210 is performed by momentarily delaying the execution of step 215 in such a manner as to have little or no perceptible impact on system performance from the users point of view."). Datanet contends that the specification describes that "the process is performed in real time to the extent possible without impacting the user's experience[.]" *Id.* at 12. Based on these disclosures, Datanet contends that this claim term is entirely understandable to a POSITA. *Id.* at 13.

Datanet contends that one does not need to be a computer expert to understand this claim limitation; rather

> we have all experienced the use of computer programs that on the one hand (1) work in the background without us even consciously noticing anything, and, on the other hand, (2) computer programs and updates where the user is forced to wait (and perhaps step out for a coffee) as processes slowly occur.

*Id.* at 13. Datanet's expert opines that a POSITA "would be familiar with the general guidelines in the software industry as to what is a substantially imperceptible delay." *Id.* at 13 (citing Response, Ex. E at ¶¶ 60–61). Datanet's expert opines that:

> When combined with the teachings in the specification and the provisional application, which in describing the function of the backup program state, "the user must not perceive that the [backup] application is in any[]way [sic] decreasing the performance of the PC," a POSITA would clearly understood what is meant by this claim limitation.

*Id.* at 13–14.  Datanet contends that "[t]here are even metrics in the industry related to acceptable response times. *Id*. at 14 (citing Response, Ex. E at ¶ 60).  Furthermore, Datanet contends that the inventors "suggest[ed] that the threshold for impact" was 2% of CPU performance.  *Id.* (citing Response, Ex. D at DATA001691).

In its reply, Dropbox contends that Datanet fails to identify that provides reasonable certainty to a POSITA as to the scope of this term.  Reply at 4.  With respect to the passages from the specification that Datanet cites, Dropbox contends that those passages do not clarify how long a "momentary delay" can be while remaining "substantially imperceptible" or merely state that the process occurs in "[r]eal time, with minimized performance impact." *Id.*  Dropbox contends that neither of these passages provide the necessary level of certainty for a POSITA.  *Id.*

With respect to Datanet's assertion that CPU impact, time delay, or both may be metrics for "substantially imperceptible," Dropbox contends that these "inconsistent and competing possibilities confirm the lack of reasonable certainty to a POSITA.  *Id.* (Reply, Ex. J at ¶¶ 23–27).

With respect to certain timing metrics Datanet's expert cites, Dropbox contends that "nowhere even attempts to delineates what purportedly constitutes 'imperceptib[ility],' let alone 'substantial imperceptibility.'" *Id.* at 5.

In its sur-reply, Datanet contends that the passages it cited in its Response provides at least reasonable certainty to a POSITA as to the scope of this claim term.  Sur-Reply at 3–4.

Datanet contends that Dropbox "find[s] fault that the claim term is not easily amenable to numerical certainty[,]" which is not legally required.  *Id.* at 4.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Dropbox that the term is indefinite for the reasons that follow. ***First***, the Court agrees with Dropbox that "imperceptible" depends on the "unpredictable vagaries of any one person's opinion." *Intell. Ventures*, 902 F.3d at 1381. More specifically, what impacts are perceptible may vary for different people, each of whom have different reaction times, quicker thinking, personalized expectations of computer speeds, *etc.* As such, the Court concludes that a POSITA would not understand the scope of this term with at least reasonable certainty; as such, this term is indefinite based on the word "imperceptible."

***Second***, while terms of degree, *e.g.*, "substantially," are not inherently indefinite, because the specification does not provide guidance for a POSITA as to the boundaries of this word, the term is indefinite. *Interval Licensing LLC v. AOL, Inc.*, 766 F.3d 1364, 1371 (Fed. Cir. 2014) ("The claims, when read in light of the specification and the prosecution history, must provide objective boundaries for those of skill in the art."). In particular, the Court agrees with Dropbox that the passages Datanet cites either essentially repeat the claim language ('850 Patent at 3:18–21) or simply recite that an impact should have "little or no perceptible impact on system performance" ('850 Patent at 7:25–28). But neither passage provides a POSITA guidance to determine what is a perceptible impact and what is an imperceptible impact, let alone a "substantially imperceptible impact."

***Third***, the Court disagrees with Datanet that the provisional application's disclosure of a "2% CPU performance impact has been set as the threshold of acceptability" provides a POSITA guidance as to the scope of this term. Response, Ex. D at DATA001691. At most, this statement

describes that a 2% CPU performance impact for an unspecified computer system may result in an imperceptible impact for some people. But for a slower computer system, the impact may be perceptible for those people. As such, the Court concludes that this statement in the provisional application does not provide necessary "objective boundaries" for a POSITA. Response, Ex. D at DATA001691. Furthermore, for a very slow computer, even a CPU performance impact that is less than 2% may result in a perceptible impact, at least for some people.

Therefore, for the reasons described above, the Court concludes that Dropbox has met the high bar of clear and convincing evidence and thus finds that the term is indefinite.

### D. Term #4: "a selection to preview a selected previous version of the file"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
| --- | --- | --- |
| #4: "a selection to preview a selected previous version of the file"<br><br>U.S. Patent No. 10,585,850, Claims 1, 10, 18<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Show or represent an example of the earlier version of the file / showing or representing an example of an earlier version that has been chosen" | A selection to view the content of a selected previous version of the file before restoration / viewing the content of the selected revision of said file before restoration/viewing the selected another revision of said file before restoration |

**The Parties' Positions:**

With respect to "preview," Dropbox contends that "preview" means to "view the content," which is reflected in its proposed construction. Opening at 12. Dropbox contends that Datanet's alternative proposed construction incorrectly construes "preview" as "represents" because the claim language uses both and that they are presumed to have different meanings. *Id.* at 12–13 (citing cases). Dropbox further contends that "show or represent" is broader than "preview," and that there is no support in the specification for construing "preview" to mean "show or represent." *Id.* at 13. Dropbox contends that Applicant's prosecution statements also confirm that

"'previewing' is not simply presenting a list of previous versions, nor is it 'representing' (e.g., through an icon) an 'example' of the previous version." *Id.* at 14.

Dropbox contends that Datanet's alternative proposed construction also improperly broadens the claim scope by construing "previous version of the file" in the term as "an example of an earlier version that has been chosen" because an "example" of a file could be completely unrelated to the file. *Id.* at 13.

With respect to "restoration," Dropbox contends that the claim language "clearly contemplates" that the preview step occurs before the restoration step, as the former appears before the latter in the claim. *Id.* at 15. Dropbox also contends that the plain-and-ordinary meaning of "preview" describes that the viewing occurs before another action, in this case, 'restoration." *Id.*

With respect to "selected previous version," Dropbox contends that Datanet's alternative proposed construction improperly replaces this term with "an earlier version." *Id.* In particular, Dropbox contends that the claims use this term multiple times and that by replacing "selected previous version" with "an earlier version," Datanet's alternative proposed construction rewrites the claim language. *Id.*

In its response, Datanet contends that this term is straight forward and easy to understand, and thus does not require construction. Response at 15–16.

With respect to the prosecution history, Datanet contends that the prior art reference in question (Whiting) discloses "little more than mounting a 'temporary disk volume with a directory structure identical to that of the entire original disk volume at the time of the backup' and letting the user 'then access the files directly using his own applications'[,]" but it does not "disclose showing or representing an example of the earlier version of the file." *Id.* at 16–17.

With respect to Dropbox's proposed construction, Datanet contends that "'preview' does **not** necessarily mean to 'view the content of.'" *Id.* at 17 (emphasis in Datanet's brief). Datanet contends that "[r]ewriting the claim language to change 'preview' to 'view the contents of' is inappropriate, does not add any clarity, and should be rejected by the Court." *Id.*

With respect to "before restoration" in Dropbox's proposed construction, Datanet contends that the claim language does not require adding that phrase. *Id.* Datanet contends that, at most, to the extent the surrounding claim language requires viewing the content of a file, the Court should not read in other claim limitations into this claim term. *Id.* at 18. Finally, Datanet contends that the presumption is that there is no order to method steps, so it would be improper to require that the preview step occur before restoration. *Id.*

In its reply, Dropbox contends that Datanet cannot point to anything in the '850 Patent that indicates that "previewing" does not mean "viewing the content." Reply at 6. Dropbox contends that the provisional application provides examples where the claimed previewing functionality is a preview of the content of the selected previous version. *Id.* (citing Response, Ex. D at 33).

With respect to "before restoration" in its proposed construction, Dropbox contends that there is no logical or grammatical basis for any other order. *Id.* Dropbox contends that "[e]ven the provisional references an alleged preview step before restoration." *Id.* (citing Response, Ex. D at 33, 35 (selection to preview); 34, 36 (preview); 37–40 (restoration)). Dropbox contends that Claim 6 also recites that previewing occurs before restoration. *Id.*

In its sur-reply, Datanet contends that a lay jury and a POSITA understand the meaning of "preview." Sur-Reply at 5. Datanet contends that Dropbox "has failed to articulate any reason why 'view the content of' is superior to the actual language, 'preview.'" *Id.*

Datanet contends that "before restoration" in Dropbox's proposed construction improperly adds a limitation not present in the claims.  *Id.*  Datanet contends that while "it may indeed be the ordinary course of things that the preview step occurs before restoration, but that is ***not*** a *requirement* found anywhere in the claim. It is legal error to add additional claim limitations under the purported guise of claim construction."  *Id.* (citing *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1325 (Fed. Cir. 2003)) (emphasis in Datanet's brief).

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  ***Second***, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

***Third***, the Court concludes that the term—"a selection to preview a selected previous version of the file"—is readily understandable to a POSITA and a lay jury.  *Phillips*, 415 F.3d at 1313; *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) ("The district court simply must give the jury guidance that can be understood and given effect by the jury once it resolves the issues of fact which are in dispute.").  As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction."  *C.R. Bard*, 388 F.3d at 863 (internal quotations

omitted). For the same reason, the Court declines to adopt Datanet's alternative proposed construction.

**Fourth**, with respect to Dropbox's proposed construction, the Court agrees with Datanet that "before restoration" is not a requirement in the claims, nor is it necessarily required by the claim language. For example, the while it may be more common that restoration occurs after the preview, restoration may also occur <u>before</u> the preview, and if the file in question is not the one to be restored, the restoration simply needs to be undone.

**Fifth**, with respect to the prosecution history, the Court agrees with Datanet that the Whiting prior art reference discloses mounting the backup set as a temporary volume such that the user may view what files are present in a particular folder / directory of the backup, but not that the user previews the file itself prior to mounting.

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

### E. Term #5: "retrieving the restorable representation"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #5: "retrieving the restorable representation"<br><br>U.S. Patent No. 10,585,850, Claims 1, 6, 10, 14, 18<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Finding or getting an example rendering of the chosen file as it previously existed" | Search, locate and return the portrayal, depiction or denotation of a version, such as an image, picture, symbol, or sign that may be restored to a prior version of the file |

**The Parties' Positions:**

The parties have two disputes: the meanings of (1) "retrieving" and (2) "representation." With respect to the former, Dropbox contends that the claim language describes that "[t]o complete the process of 'retrieving the restorable representation,' the 'restorable representation' must be

searched for, located, and returned from the remote storage location." *Id.* at 16 (citing Opening, Ex. D at ¶ 54). Dropbox contends that the specification discusses "searching" for files, thus indicating that "searching" is part of "retrieving." *Id.* (citing '850 Patent at 3:40–42, 3:52–53).

With respect to the latter, Dropbox contends that its construction is consistent with the common definition for "representation." *Id.* (citing Opening, Ex. E at 5),

With respect to Datanet's alternative proposed construction, Dropbox contends that "finding or getting" does nothing to clarify the meaning of "retrieving." *Id.* at 17. Dropbox further contends that "getting" is "a far too generic term in the context of the claims and specification[.]" *Id.* Dropbox contends that construing "the restorable representation" as "an example rendering of the chosen file as it previously existed" completely rewrites the claim language and broadens the claim. *Id.*

In its response, Datanet first contends that Claims 7 and 8 describes that the "restorable representation" includes things like "(1) an encrypted version of the file, (2) a compressed version of the file, or (3) a "delta" file, which has incremental change data between versions[.]" Response at 19, 21.

Datanet contends that the "best construction is no construction at all." Response at 19. With respect to "restorable representation," Datanet contends that:

> "example" or another word indicating there need not be one-to-one correspondence in content between the two files is necessary to give meaning to claims 7 and 8 which make clear that the restorable representation does not need to be an exact copy of the previous version of the file. Datanet's construction clarifies this point.

*Id.*

With respect to Dropbox's proposed construction, Datanet contends that it improperly construes "retrieving" as requiring "searching and locating," when something can be retrieved without searching and locating, *e.g.*, when where it is located is known. *Id.* at 20. Datanet contends

26

that Dropbox's expert does not explain why a POSITA would understand that "retrieving" to include "searching and locating." *Id.*

Datanet contends that there is no support in the specification for Dropbox's construction for "restorable representation," nor has Dropbox explained why the dictionary definition it provided is correct. *Id.*

In its reply, Dropbox contends that the specification "confirms Dropbox's construction by discussing a 'search' for files in a particular 'location.'" Reply at 7–8 (citing '850 Patent at 3:40–42, 3:52–53). Dropbox contends that "finding" in Datanet's alternative proposed construction implies that "searching" is required. *Id.* at 8. Dropbox contends that even if the user knows where something is, the user still needs to search to locate it. *Id.* Dropbox contends that Datanet "fails to identify anything in the specification or claims showing that the system knows where the file is." *Id.*

With respect to "example" in Datanet's alternative proposed construction, Dropbox contends that Datanet does not dispute that "example" could be something completely different than the file to be restored. *Id.* Rather, Dropbox contends that "representation" requires that at least some content needs to be shared. *Id.* at 8.

In its sur-reply, Datanet contends that Dropbox's proposed construction is "nothing more than the frowned upon 'obligatory exercise in redundancy.'" Sur-Reply at 5 (citing *EmeraChem Holdings, LLC v. Volkswagen Grp. Of Am., Inc.* 714 F. App'x 995, 997 (Fed. Cir. 2017)). Datanet contends that Dropbox "fails to articulate any reason 'retrieving' would not be understood or how its proposal of 'search, locate, and return' is clearer than Datanet's proposal of 'finding or getting.'" *Id.*

With respect to "example" in Datanet's alternative proposed construction, Datanet contends that Claims 7 and 8 provide examples of a file that are completely different, *e.g.*, an encrypted version of the file, than the file to be retrieved. *Id.* at 6.

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. ***Second***, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

***Third***, the Court concludes that the word "retrieving" is readily understandable to a POSITA and a lay jury. *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at 1366 (Fed. Cir. 2004). As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction." *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).

***Fourth***, with respect to Dropbox's proposed construction, the Court agrees with Datanet that Dropbox's proposed construction excludes the types of restorable representations recited in the claims. More specifically, Claim 7 recites "wherein the restorable representation of the selected previous version comprises one or more of a compressed and encrypted version of the selected previous version" while Claim 8 recites "wherein the restorable representation of the selected previous version comprises an incremental change to the file." In both claims—but for

Claim 7 in particular—the user may not be able to "view the content of a selected previous version of the file" because the contents of files within the scopes of Claims 7 and 8 may simply be gibberish as they may be encoded in a way that is not viewable for a human.

**Sixth**, with respect to Datanet's alternative proposed construction, the Court agrees with Datanet that the "best construction is no construction at all."  Response at 19.  Furthermore, the Court concludes that it, at best, unnecessarily paraphrases the claim term.  *C.R. Bard*, 388 F.3d at 863 (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted).  At worst, Datanet's alternative proposed construction changes the scope of the claim term by substituting words with similar, but not identical meanings, *e.g.*, "finding or getting" for "retrieving" and "examples" for "representation."  *Phillips*, 15 F.3d at 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw*, 158 F.3d at 1250).

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

**F.   Term #6: "temporary first storage location" / "first temporary storage location" / "temporary storage location"**

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #6: "temporary first storage location" U.S. Patent No. 8,473,478, Claims 1, 8–11  "first temporary storage location" U.S. Patent No. 8,473,478, Claims 1, 8–11  "temporary storage location" | No need for construction; plain and ordinary meaning.  Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." | Any storage device, buffer, folder, directory or designated area or location on a storage device that serves as the first storage location to which the archive file is temporarily moved after its creation |

| U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 23, 24.<br><br>Proposed by Dropbox | | |
|---|---|---|

**The Parties' Positions:**

The dispute between the parties is whether "temporary" and "first" need to be construed, and, if so, what the construction of those terms should be. *See, e.g.*, Reply at 8, Sur-Reply at 6.

Dropbox contends that its proposed construction "makes clear that the recited temporary storage location (i) serves as the first storage location, (ii) to which the archive file is temporarily moved after its creation." Opening at 18 (citing *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005)). Dropbox contends that the surrounding claim language "confirms the accuracy of [its] proposed construction." *Id.* (citing '478 Patent, Claims 1, 8–11; '348 Patent, Claims 1, 8).

With respect to "first," Dropbox contends that the claim language requires that the recited steps must be performed in the order written. *Id.* at 19 (citing *Altiris*, 318 F.3d at 1369–70). In particular, Dropbox contends that:

> because the claims recite the step of "creating an archive file from the operating file and storing the archive file in a temporary first storage location," the archive file must be first created before it can be stored in a "temporary first storage location." Likewise, the archive file must be stored "in the first temporary storage location" before a database can be updated "to indicate that the archive file is located in the first temporary storage location." And the archive file must be moved "from the first temporary storage location to an intermediate storage location" before the database can be updated "to indicate the archive file is located in the intermediate storage location."

*Id.* (citing cases).

Dropbox contends that the prosecution history for the '478 Patent "confirms" its proposed construction.  *Id.* at 20.  Dropbox contends that Applicant added "temporary" to overcome a rejection.  *Id.*  Dropbox contends that Applicant "focused on the prior art's purported lack of disclosure of 'moving' the file in an effort to distinguish the claims from the prior art."  *Id.*

Dropbox contends that Datanet's alternative proposed construction reads both "first" and "temporary" out of the claim term.  *Id.* at 21.

In its response, Datanet contends that "temporary" and "first" are words "known to everyone and there is no need to construe such words."  Response at 22 (citing cases).

Datanet contends that "Dropbox has re-written the term to encompass no less than three other parts of the claim limitations 'creating an archive file', 'storing the archive file', and 'temporally proximate'."  *Id.* at 23.  Datanet contends that this is improper as it this claim term would be redundant with other claim limitations.  *Id.*

Datanet further contends that it is inappropriate to read in a temporal ordering based on the "first" as that is simply "common patent-law convention to distinguish between repeated instances of an element or limitation."  *Id.* (quoting *Free Motion Fitness, Inc. v. Cybex Intern., Inc.*, 423 F.3d 1343, 1348 (Fed. Cir. 2005)).

In its reply, Dropbox contends that Datanet's alternative proposed construction reads "first" and "temporary" out of the claim term.  Reply at 8.  Dropbox contends that Datanet does not dispute that its alternative proposed construction "could cover a permanent (non-temporary) storage location and a location to which the archive file is not first moved."  *Id.*

With respect to claim language requires that the recited steps must be performed in the order written, Dropbox contends that "a claim need not recite 'first,' 'second,' etc., for it to require a particular sequence of steps."  *Id.* at 9 (citing cases).  Dropbox contends that "the recited steps

here must be performed in the order written as a matter of logic and grammar." *Id.* (citing '348 Patent at 8:50–54, 8:62–64, 8:66–9:2).

In its sur-reply, Datanet contends that "temporary" and "first" are words "known to everyone and there is no need to construe such words." Sur-Reply at 6–7 (citing cases). Datanet contends that Dropbox does not point to any evidence that these two words are used in any "special or unorthodox" way. *Id.* at 7. Datanet contends that Dropbox is silent as to why these terms need to be construed. *Id.*

Datanet contends that under Dropbox's proposed construction, the meaning of the claims would shift. *Id.* More specifically, Datanet contends that since RAM is always going to be the "first storage location to which the archive file is temporarily moved after its creation." *Id.* Datanet contends that "Dropbox's proposed construction would narrow the claim to only allow for RAM to be the 'first' 'temporary' storage location since RAM will always be the 'first storage location to which the archive file is temporarily moved after its creation.'" *Id.*

Finally, Datanet contends that Dropbox has not provided any evidence that "first" is "being used other than as a patent-law convention to distinguish one storage location from the other storage locations referenced in the claims." *Id.* at 8.

**The Court's Analysis:**

With respect to "storage location," the Court agrees with the parties that the patentee acted as their own lexicographer for the term "storage location." Accordingly, the Court holds that "storage location" should be construed as "any storage device, or a buffer, folder, directory or designated area on a storage device." '478 Patent at 4:34–35.

With respect to "temporary first," after reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow. *First*, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning. *Azure Networks*, 771 F.3d at 1347. *Second*, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning. *Thorner*, 669 F.3d at 1365.

*Third*, the Court concludes that the words "temporary" or "first" are readily understandable to a POSITA and a lay jury. *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at 1366 (Fed. Cir. 2004). As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction." *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).

*Fourth*, with respect to Dropbox's construction, the Court agrees with Datanet that "first" (and, similarly, "second") do not describe the temporal order of the storage locations, but rather that just follow the "common patent-law convention to distinguish between repeated instances of an element or limitation." *Free Motion Fitness*, 423 F.3d at 1348. Based on that, the Court concludes that, had the patentee wished to require that the "first temporary storage location" was the "initial storage location," the patentee would not have used "first" to mean "initial" (or "second" to mean "next") given that the patentee knows that "first" and "second" are a common patent law convention. Rather, the patentee would have chosen different language, *e.g.*, "initial" and "next." Furthermore, Dropbox has not pointed to anything specific in the claims that indicates "first" means "initial."

*Fifth*, all of the claims that use this term are "comprising" claims, which leaves open the possibility that there is an unclaimed step that stores the archive file to an initial storage location, before the archive file is stored to the "first temporary storage location." *David Netzer Consulting Eng'r LLC v. Shell Oil Co.*, 824 F.3d 989, 998 (Fed. Cir. 2016) ("It is true that a method claim with the word 'comprising' appearing at the beginning generally allows for additional, unclaimed steps in the accused process[.]").  Based on the above, a POSITA would not understand that "first temporary storage location" is necessarily the initial storage location.

*Sixth*, with respect to Dropbox's argument that the recited steps here must be performed in the order written as a matter of logic and grammar, it is unclear how this particular argument means that the term should not be construed according to its plain-and-ordinary meaning or that Court must construe the meaning of "first" or "temporary."  Furthermore, to the extent the method steps must be performed in a specific order, for the reasons described above, the "first temporary storage location" is not necessarily the "initial" storage location.

*Seventh*, with respect to Datanet's alternative proposed construction, the Court concludes that it, at best, unnecessarily paraphrases the claim term.  *C.R. Bard*, 388 F.3d at 863 (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted).  At worst, Datanet's alternative proposed construction reads "first" and "temporary" out of the claim term.  *Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw*, 158 F.3d at 1250).

Therefore, for the reasons described above, the Court holds that "storage location" should be construed as "any storage device, or a buffer, folder, directory or designated area on a storage

device," while "first" and "temporary" should be construed according to their plain-and-ordinary meanings.

### G. Term #7: "intermediate storage location"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #7: "intermediate storage location"<br><br>U.S. Patent No. 8,473,478, Claim 1; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 27, 28, 30<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." | Any storage device, buffer, folder, directory or designated area or location on a storage device that is a non-permanent storage location to which the archive file is moved after the first temporary storage location and before a final destination. |

**The Parties' Positions:**

Similar to the dispute for the last term, the parties agree on the meaning of "storage location," but dispute the meaning of "intermediate." Opening at 22, Response at 24. Dropbox contends that its proposed construction

> makes clear that the "intermediate storage location" is distinct from a "permanent storage location" by explaining that an "intermediate storage location" is "any storage device, buffer, folder, directory or designated area or location on a storage device that is a *non-permanent storage location* to which the archive file is moved after the first temporary storage location and before a final destination."

Opening at 22 (emphasis in Dropbox's brief). Dropbox contends that the claim language of the '348 Patent uses the language "intermediate or a permanent storage location," which indicates that the two are different storage locations. *Id.* at 22–23. Dropbox contends that the '478 Patent similarly describes that there is both an intermediate storage location and a permanent storage location. *Id.* at 23.

Dropbox contends that the claim language also describes that the "intermediate storage location" "must be the location to which the archive file is moved (i) after the first temporary

storage location, and (ii) before a final destination—that is, the "intermediate storage location" is intermediate to the first temporary storage location and the final destination." *Id.* at 23–24 (citing '348 Patent, Claim 1; '478 Patent, Claim 1).

Dropbox contends that "[a]s a matter of logic and grammar, the recited steps must be performed in the order written." *Id.* (citing *Altiris*, 318 F.3d at 1369–70).  For example, Dropbox contends that Claim 1 in both patents recite "moving the archive file from the first temporary storage location to an intermediate storage location[.]" *Id.*  Dropbox contends that nothing in the specification suggests otherwise. *Id.* at 25.

With respect to Datanet's alternative proposed construction, Dropbox contends that it improperly ignores the word "intermediate." *Id.*

In its response, Datanet contends that "intermediate" is a word "that is known to everyone and there is no need to construe such words."  Response at 24 (citing *EmeraChem*, 714 F. App'x at 997).  By contrast, Datanet contends that Dropbox uses forty words to completely re-define a well-understood three-word phrase. *Id.*

Datanet contends that "Dropbox reads in a mandatory order which is not found in the meaning of 'intermediate' and which is the subject of entirely different claim limitations." *Id.* at 25.  Datanet contends that Dropbox's proposed construction improperly requires that the second storage location be the final destination when the claim language does not impose such a requirement. *Id.*

In its reply, Dropbox contends that its proposed construction "maintains the patents' definition and adds words only to account for the qualifying term in the phrase "*intermediate* storage location."  Reply at 10 (emphasis in Dropbox's brief).  With respect to Datanet's argument that the "intermediate storage location" is not located between the "temporary storage location"

36

and the "final destination," Dropbox contends that claim language describes that the "intermediate storage location" is located therebetween.  *Id.*

In its sur-reply, Datanet contends that its position is that "intermediate" should be construed as having its plain-and-ordinary meaning.  Sur-Reply at 8.  Datanet contends that Dropbox's proposed construction reads in a "host of additional qualifiers and limitations which are found in other claim limitations or which do not exist at all—and which have nothing to do with the meaning of 'intermediate.'"  *Id.*

**The Court's Analysis:**

With respect to "storage location," the Court agrees with the parties that the patentee acted as their own lexicographer for the term "storage location."  Accordingly, the Court holds that "storage location" should be construed as "any storage device, or a buffer, folder, directory or designated area on a storage device."  '478 Patent at 4:34–35.

With respect to "temporary first," after reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  ***Second***, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

***Third***, the Court concludes that the word "intermediate" is readily understandable to a POSITA and a lay jury.  *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at 1366 (Fed. Cir. 2004).  As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a

claim by substituting synonyms" as that "does not represent genuine claim construction." *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).

**Fourth**, the word "intermediate" already implies that the associated noun is neither the initial nor final locations. As such, at best, adopting Dropbox's proposed construction is "an obligatory exercise in redundancy." *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997).

**Fifth**, with respect to Datanet's alternative proposed construction, the Court concludes that it, at best, unnecessarily paraphrases the claim term. *C.R. Bard*, 388 F.3d at 863 (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted). Worse yet, Datanet's alternative proposed construction reads "intermediate" completely out of the claim term. *Phillips*, 415 F.3d at 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw*, 158 F.3d at 1250).

Therefore, for the reasons described above, the Court holds that "storage location" should be construed as "any storage device, or a buffer, folder, directory or designated area on a storage device," while "intermediate" should be construed according to their plain-and-ordinary meaning.

### H.  Term #8: "final destination"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|
| #8: "final destination"<br><br>U.S. Patent No. 8,473,478, Claim 1; U.S. Patent No. 9,218,348, Claim 1<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Any storage device or a buffer, folder, directory or designated area on a storage device that can store data" | A location to which the archive file is last moved |

**The Parties' Positions:**

Dropbox contends that Dropbox's proposed construction "gives meaning to the word 'final' in the disputed term and respects the distinction between 'destination' and 'storage location' as used in the claims[.]"  Opening at 26.  Dropbox contends that claim language recites "temporary storage location," "intermediate storage location," "a second storage location," a "permanent storage location," in addition to the "final destination," which indicates that the latter is not the same as the aforementioned storage location terms.  *Id.* (citing *SIPCO, LLC v. Emerson Elec. Co.*, 794 F. App'x 946, 949 (Fed. Cir. 2019)).

Dropbox contends that its proposed construction of "final destination" also comports with the plain-and-ordinary meaning of "final" and "destination."  *Id.*

Dropbox contends that Datanet's alternative proposed construction, by contrast, "impermissibly ignores the word 'final' and conflates 'destination' and 'storage device' despite their distinct usage in the claim language."  *Id.*

In its response, Datanet contends that a lay jury can readily understand the meaning of "final destination."  Response at 25 (citing *Aloft Media, LLC v. Yahoo!, Inc.*, No. CIV.A. 6:08-CV-255, 2009 WL 2058661 (E.D. Tex. July 13, 2009)).

Datanet contends that Dropbox's proposed construction improperly requires that movement of the file to the "final destination."  *Id.*  But Datanet contends that the claims do not require this particular movement.  *Id.*  Datanet contends that the claim language, by contrast, only requires "determining a final destination" and "moving the archive file to the second storage location," *i.e.*, it does not further require moving the archive file to a final destination.  *Id.*

In its reply, Dropbox contends that "a POSITA would understand that the claimed 'determining a final destination for the archive file' means determining a last storage location after movement of the archive file, regardless of whether the last storage location is second."  Reply at 11 (citing Reply, Ex. J at ¶¶ 36–37).

In its sur-reply, Datanet contends that a lay jury "can easily understand 'final destination.'"  Sur-Reply at 8.  Datanet contends that the Court should reject Dropbox's proposed construction because it requires moving the archive file to the final destination when the claims only require determining the final destination.  *Id.* at 9.  Datanet contends that, contrary to Dropbox's argument that a POSITA would understand that the claimed "determining a final destination for the archive file" means determining a last storage location after movement of the archive file, and that a normal reading of the claim only requires determining the final destination, and not moving the archive file to the final destination.  *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  ***Second***, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

***Third***, the Court concludes that the words "final" and "destination" are readily understandable to a POSITA and a lay jury.  *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at

1366 (Fed. Cir. 2004).  As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction."  *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).

**Fourth**, the Court agrees with Plaintiff that the claim language only requires "determining" a final destination," and not also "moving" an archive file to the final destination.  Based on that, Dropbox's proposed construction improperly adds a limitation to the claim that is not already present in the claim.  *Generation II Orthotics Inc. v. Med. Tech. Inc.*, 263 F.3d 1356, 1365 (Fed. Cir. 2001) (a proposed claim construction must not "revise or ignore the explicit language of the claims.").

**Fifth***, with respect to Datanet's alternative proposed construction, the Court concludes that it, at best, unnecessarily paraphrases the claim term.  *C.R. Bard*, 388 F.3d at 863 (agreeing that "merely rephrasing or paraphrasing the plain language of a claim by substituting synonyms does not represent genuine claim construction") (internal quotations omitted).  Worse yet, Datanet's alternative proposed construction reads "final" completely out of the claim term.  *Phillips*, , 415 F.3d at 1316 (Fed. Cir. 2005) ("The construction that stays true to the claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction.") (quoting *Renishaw*, 158 F.3d at 1250).  Furthermore, Datanet's alternative proposed construction improperly limits the claim scope of "destination" only to "storage location."

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

## I.   Term #9: "event"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|------|----------------------------------|----------------------------------|
|      |                                  |                                  |

| #9: "event"

U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 26, 27

Proposed by Dropbox | No need for construction; plain and ordinary meaning.

Alternatively, "happening" or "an action or occurrence to which a program might respond". | a triggering notification or message about a storage device status or the status of an operation performed on a file |
|---|---|---|

**The Parties' Positions:**

Dropbox contends that its proposed construction is consistent with the intrinsic evidence. Opening at 27.  Dropbox contends that the claim language describes "event" in the context of triggering a step.  *Id.* at 27–28 (citing '348 Patent, Claim 1(c); '478 Patent, Claim 1).  Dropbox contends that the claim language describes that an event may be a message, but is not so limited. *Id.* at 28 (citing '348 Patent, Claim 12(d); '478 Patent, Claim 9).  Dropbox contends that the claim language also "confirms that the triggering notification or message that constitutes an 'event' is about a storage device status or the status of an operation performed on a file."  *Id.* at 28 (citing '348 Patent, Claims 12(d), 26; '478 Patent, Claim 10).

Dropbox contends that the specification also supports its proposed construction.  *Id.*  More specifically, Dropbox contends that the specification describes that "exemplary events" are storage-related.  *Id.*

Dropbox finally contends that its proposed construction is consistent with a POSITA's understanding of the term.  *Id.* (citing Opening, Ex. D at ¶¶ 56–59).

Dropbox contends that "happening" in Plaintiff's alternative proposed construction is ambiguous and would not resolve the parties' dispute regarding the construction of this term.  *Id.* at 28–29 (citing cases).

In its response, Datanet contends that, because a POSITA knows what a computer "event" is, the Court does not need to construe this term.  Response at 26.  Datanet contends that its alternative proposed construction is consistent with dictionary definitions.  *Id.*  Datanet agrees with Dropbox that an "event" can include "a message from a timer" or "a message indicating when the second storage location is available," but contends that it is not so limited, but rather can include the entire backup procedure.  *Id.* (citing 478 Patent at 2:56–59).  Datanet contends that the specification also describes "events" as happening or occurrences.  *Id.* at 26–27 (citing '478 Patent, at 3–60–67).

Datanet contends that Dropbox's proposed construction improperly imports a limitation from the specification into the claim term.  *Id.* at 27 (citing cases).  More specifically, Datanet contends that there is no reason why events are limited to storage-related events only.  *Id.*  Datanet contends that the passage that Dropbox and its expert cites to plainly describes that the embodiments are exemplary and that it is improper to limit a claim term to the disclosed embodiments.  *Id.* (citing *Vulcan Eng'g Co. v. Fata Aluminum, Inc.*, 278 F.3d 1366, 1376 (Fed. Cir. 2002)).

In its reply, Dropbox contends that the dictionary that Datanet cites to—the Microsoft Computing Dictionary—is "unreliable."  Reply at 11.  Dropbox contends that the definition is also "inapt" because it refers to user-initiated action while the invention is directed towards computing devices.  *Id.*

Dropbox contends that Datanet "cherry picks" the specification and that there is no lexicography or disavowal that limits "events" to some sort of backup event.  *Id.* at 12.

Dropbox contends that Datanet's alternative proposed construction unduly broadens the scope of the claim term.  *Id.*  More specifically, Dropbox contends that a "happening" or "an action

or occurrence to which a program might respond" is so broad that it could potentially encompass anything.  *Id.*

With respect to Datanet's argument that Dropbox's proposed construction imports a limitation from the specification into the claim term, Dropbox contends that it only consulted the specification for guidance on the term's meaning.  *Id.*

In its sur-reply, Datanet contends that a lay jury and a POSITA would "both know what 'happening' and 'event' mean."  Sur-Reply at 9.  With respect to the dictionary it cited to, Datanet contends that it did not include the user-initiated portion of the definition as it said that it was "***often*** generated by the user," and thus is not limiting.  *Id.* (emphasis added).

Datanet contends that Dropbox's proposed construction is at odds with the specification description of "backup events."  *Id.* at 10.  Datanet contends that the specification also describes that steps within the backup process are also referred to as "events."  *Id.* (citing '478 Patent at 3:60–67)).


**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  ***First***, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  ***Second***, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

***Third***, as demonstrated by the Microsoft Computing Dictionary, "events" has a well-known meaning in the art.  As such, no construction is necessary.

***Fourth***, the Court concludes that the words "event" is readily understandable to a POSITA and a lay jury.  *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at 1366 (Fed. Cir. 2004).  As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction."  *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).  For the same reason, the Court declines to adopt Datanet's alternative proposed construction.

***Fifth***, the Court agrees with Datanet that Dropbox's proposed construction improperly attempts to limit the claim term to some of the disclosed embodiments.  *Liebel-Flarsheim*, 358 F.3d at 913 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").  Dropbox cites 5:61–6:1 of the '478 Patent and 5:66–6:6 of the '348 Patent in support of its proposed construction.  While both of these passages support Dropbox's proposed construction, they also plainly describes that these events are "exemplary."  Since Dropbox's proposed construction appears to be coextensive with these passages, it improperly limits the scope of the claim term to what the specification describes as an exemplary embodiment.

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

**J.  Term #10: "timer"**

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
|---|---|---|

| #10: "timer"<br><br>U.S. Patent No. 8,473,478, Claims 8, 10; U.S. Patent No. 9,218,348, Claim 26<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "a mechanism, control device, or software that can count, record or indicate time or intervals" | device or component that measures and reports time intervals |

**The Parties' Positions:**

Dropbox contends that its proposed construction comports with the intrinsic evidence. Opening at 29. Dropbox contends that the claims often use time as part of the phrase "message from a timer." *Id.* Dropbox contends that the specification discloses that "messages from an input buffer timer" are "sent at *time intervals controlled by a timer* or at time intervals selected by the user." *Id.* (citing '478 Patent at 5:44–47, '348 Patent at 5:49–51) (emphasis in Dropbox's brief). Dropbox contends that its proposed construction is consistent with technical dictionary definitions. *Id.* at 30 (citing Openign, Ex. D at ¶¶ 62-66).

Dropbox contends that Datanet's alternative proposed construction improperly broadens the claim term by allowing it to "record or indicate time intervals." *Id.* Dropbox contends that Datanet's alternative proposed construction improperly conflates a timer (which measure and reports time intervals) with a clock (which simply indicates time). *Id.* Dropbox contends that Datanet's alternative proposed construction is inconsistent with technical dictionaries and a POSITA's understanding. *Id.* (citing Opening, Ex. D at ¶ 66).

In its response, Datanet contends that a POSITA and a lay jury would be "more than familiar" with the plain-and-ordinary meaning of this term. Response at 28 (citing Response, Ex. E at ¶ 77). Datanet contends that the inventor was not using this term in a novel way. *Id.*

Datanet contends that Dropbox's proposed construction would could potentially exclude software based timers since it requires that the timer be a "device or component." *Id.* Datanet

further contends that the specification does not support limiting a timer to those that "report time intervals." *Id.*

In its reply, in response to Datanet's last point, Dropbox contends that "the specification discusses 'time intervals' as it relates to 'timer' on at least five occasions." Reply at 13. Dropbox contends that, by contrast, "indicate time" is nowhere in the specification. *Id.*

Dropbox also contends that Datanet "makes no effort to reconcile its construction that wrongly conflates the functions of a timer and a clock." *Id.* Dropbox, however, concedes it "does not dispute that software could constitute a 'timer,' as long as it measures and reports time intervals, as Dropbox proposes." *Id.* at 13 n.7.

Dropbox finally contends that Plaintiff's expert only makes unsupported assumptions. *Id.* at 13.

In its sur-reply, Datanet contends that "Dropbox has yet to articulate why this term needs to be construed or why a person of ordinary skill in the art would not understand with a timer is." Sur-Reply at 11. Datanet contends that "[m]erely rephrasing or paraphrasing the term will not help a jury understand or apply this term, and risks distorting its plain meaning." *Id.* (quoting *Advanced Aerodynamics, LLC v. Spin Master Ltd.*, No. 6:21-CV-00002-ADA, 2022 WL 1518930, at *4 (W.D. Tex. Mar. 15, 2022), report and recommendation adopted, No. W-21-CV-00002-ADA, 2022 WL 2762716 (W.D. Tex. Apr. 6, 2022)).

Datanet contends that clock-style timers can still indicate a time interval by computing the time difference between two timestamps. *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Datanet that this term should be construed according to its plain-and-ordinary meaning for the reasons that follow.  **First**, the "heavy presumption" is that terms should be construed according to their plain-and-ordinary meaning.  *Azure Networks*, 771 F.3d at 1347.  **Second**, Dropbox does not expressly allege lexicography or disclaimer, which are the only two exceptions to the general rule that a term should be construed as having its plain-and-ordinary meaning.  *Thorner*, 669 F.3d at 1365.

**Third**, the Court concludes that the words "timer" is readily understandable to a POSITA and a lay jury.  *Phillips*, 415 F.3d at 1313; *Sulzer Textil*, 358 F.3d at 1366 (Fed. Cir. 2004).  As such, the Court declines to "merely rephrase[e] or paraphras[e] the plain language of a claim by substituting synonyms" as that "does not represent genuine claim construction."  *C.R. Bard*, 388 F.3d at 863 (internal quotations omitted).  For the same reason, the Court declines to adopt Datanet's alternative proposed construction.

**Fourth**, the Court agrees with Datanet that Dropbox's proposed construction is overly narrow in that it restricts the scope of the claim term to timers that "measure[] and report[] time intervals," *i.e.*, like a stopwatch.  But, to the extent that the plain-and-ordinary meaning of "timer" requires reporting a time interval, the Court concludes that a POSITA would understand that a common method of calculating time intervals is use to a clock to determine the start and end times, and then to compute the difference between the start and end times.  Sur-Reply, Ex. F at ¶¶ 46–48.

Therefore, for the reasons described above, the Court finds that the term should be construed according to its plain-and-ordinary meaning.

### K.  Term #11: "archive file"

| Term | Datanet's Proposed Construction | Dropbox's Proposed Construction |
| --- | --- | --- |

| #11: "archive file"<br><br>U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 20, 26<br><br>Proposed by Datanet | "1) one or more files containing all of the data of an operating file in a native or altered format and/or 2) one or more files containing at least some of the data of an operating file in a native or altered format [with or without] references to the location of the remainder of the native or altered data of the operating file." | "A file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file." |
|---|---|---|

**The Parties' Positions:**

Datanet proposed this term for construction in its Response.  Response at 28.  The parties agree that the patentee acted as their own lexicographer.  Response at 29; Reply at 13–14.  But the parties dispute whether that lexicography requires clarification in light of the claims and specification.  *See, e.g.*, Response at 29.

In its response, Datanet contends that "a," in patent law, means "one or more."  Response at 29 (citing *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008)).

With respect to the addition of "in a native or altered format," Datanet contends that it added this "make clear that definition provided does not in any way suggest that the data can only be stored 'in a native or altered format' if it is in files containing 'all' rather than just 'some' of the data."  *Id.*  Datanet contends that dependent Claims 15, 20, and 22 of the '348 Patent supports this addition.  *Id.*  Datanet contends that Claims 15 and 20 "make clear that the 'archive file' described in Claim 15 can contain less than all the operating file and need only contain 'some data of the operating file.'"  *Id.* at 29–30.  Datanet contends that "Claim 22 then makes clear that that same 'archive file' from Claim 15 can also be in 'one or a combination of a native format and an altered format.'"  *Id.* at 30.

With respect to "with or without" in its proposed construction, Datanet contends that it added this phrase to "make clear what is taught in Claims 15, 20, and 21." *Id.* More specifically, Datanet contends that

> Claim 20 makes clear that the archive file from Claim 15 can be a file that contains "at least some of the dat[a] of the operating file." Since Claim 21 is dependent on Claim 20, it *adds* a limitation—meaning that the archive file of claim 15 which "comprises at least some data of the operating file", *can but is not required to* also comprise "a reference to a location of a remainder of the data."

*Id.* (emphasis in Datanet's brief).

In its reply, Dropbox contends that there are four problems with Datanet's proposed construction. Reply at 13. Dropbox provided the following annotated version of Datanet's proposed construction:

| Patents' Definition of "Archive File" | Datanet's Proposed Construction |
|---|---|
| A file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file. | "**1) one or more** files containing all of the data of an operating file in a native or altered format and/or **2) one or more** files containing at least some of the data of an operating file ~~in a native or altered format and including [with or without]~~ references to the location of the remainder of the native or altered data of the operating file." |

*Id.*

Dropbox first contends that the patentee's lexicography controls and Datanet has not provided a reason to deviate from that lexicography. *Id.* at 13–14 (citing cases).

Second, with respect to "in a native or altered format," Dropbox contends that the presence of "and/or" separates the two options (one where the files contain all of the data and one where the files contain at least some of the data). *Id.* at 14. Dropbox contends that because "in a native or altered format" appears before the "and/or," it only applies to the first type of archive file. *Id.*

Dropbox contends that Claims 20 and 22 do not support adding "in a native or altered format" for the second type of file. *Id.* More specifically, Dropbox contends that:

> Claim 20 requires the archive file to comprise "at least some data of the operating file," which is consistent with the second type of "archive file" in the patents'

definition.  And claim 22 simply narrows claim 15's scope to one of the two types—i.e., "a file containing all of the data of an operating file in a native or altered format."

*Id.*

Third, with respect to "with or without," Dropbox contends that that addition improperly removes the requirement of "references to the location of the remainder of the native or altered data of the operating file," which improperly broadens the claim.  *Id.* at 14–15 (citing *Bio-Rad Lab'ys, Inc. v. Int'l Trade Comm'n*, 998 F.3d 1320, 1330 (Fed. Cir. 2021)).

Fourth, with respect to "1) and "2)" in Datanet's proposed construction, Dropbox contends that these numbers will "mislead the jury into believing that the same, final clause ('including references to the location of the remainder of the data of the operating file') modifies only the second type of 'archive file.'"  *Id.* at 15.  Dropbox contends that interpretation is incorrect because "[t]he clause begins with the conjunction 'and' is followed by the present participle 'including,' which marks the beginning of a modifying phrase.  That phrase acts to describe the noun 'file' that appears in each of the disjunctive phrases preceding it."  *Id.*

In its sur-reply, with respect to Dropbox's first argument, Datanet contends that a patentee's "restatement of its understanding of the plain and ordinary meaning of a term, is to be afforded consideration—but it must be read in context of the other parts of the patent, such as Claims 20–22 which further help explain what was meant by 'archive file.'"  Sur-Reply at 13.  Datanet further contends that the existence of Claims 20 and 22 indicates that the patentee did not intend for the purported definition to be lexicography, but rather as a starting point.  *Id.*

With respect to Dropbox's second argument, Datanet contends that "Claim 22 belies this argument."  *Id.*  With respect to Dropbox's argument that Claim 22 is limited to the second option, Datanet contends that there is no support in the claim language for that interpretation.  *Id.* at 14.

With respect to Dropbox's third argument, Datanet contends that this argument "makes no sense." *Id.* More specifically, Datanet contends that because Claim 21 adds "wherein the archive file further comprises a reference to a location of a remainder of the data of the operating file" as a limitation to Claim 15, this limitation must not already be present in Claim 15, which indicates that the file in Claim 15 may or may not "comprise a reference to a location of a remainder of the data of the operating file." *Id.* Datanet contends that "Dropbox does not even engage with this fact or explain how Claim 21 is not destroyed under its proposed construction." *Id.*

Finally, with respect to Dropbox's fourth argument, Datanet contends that Dropbox's jury confusion argument is a "red herring." *Id.* Datanet contends that "[t]here is no reading of this text, however, which supports the argument that the final clause somehow jumps across three coordinating conjunctions (and, and, or) to apply to the first clause in the description. Indeed, such a construction would also vitiate Claim 21." *Id.*

**The Court's Analysis:**

After reviewing the parties' arguments and considering the applicable law, the Court agrees with Dropbox has met the "exacting" standards required for lexicography. *Hill-Rom Servs.*, 755 F.3d at 1371. "To act as its own lexicographer, a patentee must clearly set forth a definition of the disputed claim term other than its plain and ordinary meaning" and must "clearly express an intent to redefine the term." *Hill-Rom Servs.*, 755 F.3d at 1371 (quoting *Thorner*, 669 F.3d at 1365)). Based on the intrinsic evidence, the Court concludes that the patentee [1] clearly set forth a definition and [2] clearly express an intent to redefine the term.

With respect to the latter, both patents include a section entitled "Definitions." '478 Patent at 4:4, '348 Patent at 4:8. In this section, the patentee provided a definition for several terms,

52

including "storage location," which was at-issue for Terms #6 and #7.  Given that this section is entitled "Definitions" and each term is listed, followed by an em-dash, and then a definition (*e.g.*, "Storage Location—any storage device, or a buffer, folder, directory or designated area on a storage device."), the Court concludes that the patentee intended to define each of these terms.

| Definitions |
| --- |
| 5     Operating System (OS)—A computer program that allocates system resources such as memory, disk space, and processor usage and makes it possible for the computer to boot up to a human user interface allowing the user to interact with the computer and control its operation.<br>10     Operating File—a system or user file.<br>    Archive File—a file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including 15 references to the location of the remainder of the data of the operating file. |

'478 Patent at 4:4–16.

With respect to the former, the Court concludes that the words after the em-dash ("a file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file.") meet the requirement that a "patentee must clearly set forth a definition[.]"

**Second**, with respect to Datanet's argument that the patentee did not intend to redefine the terms in this section, but rather was just stating their understanding of the plain-and-ordinary meaning of these terms, the Court disagrees that the patentee did not have the requisite intent because the section is labeled "Definitions."  In the Court's experience, it is relatively rare for a patentee to use express language such as "I define" or label a section as "Definitions."  As such, when a patentee uses such language, the Court concludes that a patentee had had the requisite intent to define the term.

**Third**, with respect to Datanet's argument that Dropbox's proposed construction, which is premised that the patentee acted as their own lexicographer, cannot be correct because it violates the doctrine of claim differentiation between independent Claim 15 and dependent Claim 21 of the '348 Patent, the Court disagrees.  More specifically, while the Court agrees that it would violate the doctrine of claim differentiation, that result does not change the Court's conclusion that the patentee acted as their own lexicographer.

The Federal Circuit has held that the doctrine of claim differentiation "only creates a presumption that each claim in a patent has a different scope; it is not a hard and fast rule of construction." *Seachange*, 413 F.3d at 1369 (quoting *Kraft Foods, Inc. v. Int'l Trading Co.*, 203 F.3d 1362, 1368 (Fed. Cir. 2000)).  "[T]he doctrine of claim differentiation can not broaden claims beyond their correct scope, determined in light of the specification and the prosecution history and any relevant extrinsic evidence.... [C]laims that are written in different words may ultimately cover substantially the same subject matter." *Multiform Desiccants, Inc. v. Medzam, Ltd.*, 133 F.3d 1473, 1480 (Fed. Cir. 1998).

In this case, the lexicographical statement first appeared in the specification of the '478 Patent, which issued on June 25, 2013.  '478 Patent at 4:12–16, Cover.  The '348 Patent is a continuation of the U.S. Patent Application Ser. No. 09/957,459 ('348 Patent at 1:4–5), which eventually issued as the '478 Patent.  '478 Patent at Cover (21).  The '348 Patent issued on December 22, 2015.  '348 Patent at Cover.  The alleged claim differentiation problem only arises between Claims 15 and 21 of the '348 Patent, the child patent.  But because the lexicographical statement first appeared in the specification of the '478 Patent, which does not include the claim differentiation problem of the child patent and issued three years before the '348 Patent, the Court concludes that '348 Patent's after-arising claims do not affect whether there was a lexicographical

statement three years prior in the '478 Patent.  And because the '348 Patent is a continuation of the '478 patent and because the specifications of the two patents appear to be essentially identical, the Court holds that the lexicographical statement also applies to the '348 Patent.

Therefore, because the patentee [1] clearly set forth a definition and [2] clearly expressed an intent to redefine the term, the Court concludes that the patentee acted as their own lexicographer to define "archive file" to mean "a file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file."

## IV.   CONCLUSION

In conclusion, for the reasons described herein, the Court adopts the below constructions as its final constructions.

**SIGNED** this 10th day of November, 2023.

.

DEREK T. GILLILAND
UNITED STATES MAGISTRATE JUDGE

## I.   AGREED CONSTRUCTIONS:

| Term No. | Term | Parties' Agreed Construction |
|---|---|---|
| 1 | "computing device"<br><br>U.S. Patent No. 8,473,478, Claims *1, 8–11;* U.S. Patent No. 9,218,348, Claims *1, 8, 12–15, 30.* | "a personal computer, a laptop or notebook computer, a server, a handheld computing device, a PDA or a PAL. The term computing device is not specific to the kind of operating system being run on Such computing device, and includes devices running Microsoft operating systems, Apple Macintosh operating systems, UNIX operating systems, Linux operating systems, and other operating systems" |
| 2 | "resident program"<br><br>U.S. Patent No. 9,218,348, Claims *16, 17, 26.* | "an operating system (OS) or other program that has control over file operations such as 'read', 'write', 'save', 'rename', 'delete', 'copy', 'move', 'open', 'close', etc." |
| 3 | "storage location"<br><br>U.S. Patent No. 8,473,478, Claims *1, 2, 3, 5, 8–11;* U.S. Patent No. 9,218,348, Claims *1-5, 8, 10–15, 23, 24, 27,28, 30, 31;* U.S. Patent No. 10,585,850, Claims *1, 6, 10, 14, 18.* | "any storage device, or a buffer, folder, directory or designated area on a storage device" |
| 4 | "network attached storage device"<br><br>U.S. Patent No. 8,473,478, Claim *3;* U.S. Patent No. 9,218,348, Claims *3, 10.* | "any storage device connected directly to a network to which a first computing device is also temporarily or permanently connected, or any storage device connected to a second computing device that is also temporarily or permanently connected to the network to which the first computing device is temporarily or permanently connected" |

| 5 | "internet storage area network"<br><br>U.S. Patent No. 8,473,478, Claims *5;•* U.S. Patent No. 9,218,348, Claims *5, 11, 28.* | "any storage area (device, collection of devices, etc.) that can be accessed by the computing device when the computing device is temporarily or permanent connected to the Internet" |
|---|---|---|
| 6 | "peer-to-peer storage device"<br><br>U.S. Patent No. 9,218,348, Claims *4, 28.* | "any storage area (device, collection of devices, etc.) that can be accessed by the computing device when it is sharing resources with other network or internet accessible computers" |
| 7 | "personal attached storage device"<br><br>U.S. Patent No. 8,473,478, Claims *2;* U.S. Patent No. 9,218,348, Claims *2, 28.* | "any internal or external storage device connected to a computing device" |
| 8 | "temporally proximate"<br><br>U.S. Patent No. 8,473,478, Claims *1, 8–11;* U.S. Patent No. 9,218,348, Claims *1, 8, 12–15.* | "just before and/or just after" |

## II.   DISPUTED CONSTRUCTIONS:

| Term No. | Term | Datanet's Proposed Construction | Dropbox's Proposed Construction | Court's Final Construction |
|---|---|---|---|---|
| 1 | "responsive to a selection to not restoring the previous version" U.S. Patent No. 10,585,850, Claims 6, 14 Proposed by Dropbox | No need for construction; plain and ordinary meaning. Alternatively, "Responding to an input (such as, for example but not limited to, clicking on another version, or clicking on a 'cancel,' or interacting with some other input/element) that the user does not wish to restore the earlier version it selected for preview." | Indefinite. Dropbox disagrees with Datanet's alternative proposed construction. | Not indefinite.  Plain-and-ordinary meaning. |
| 2 | "storing the selected previous version … as the current version on the local storage location" / "storing the second selected previous version … as the current version on the local storage location" U.S. Patent No. 10,585,850, Claims 1, 6, 10, 14, 18 Proposed by Dropbox | No need for construction; plain and ordinary meaning. Alternatively, "Saving the earlier version of the file … as the most recent version of the file / saving the second chosen earlier version of the file … as the most recent version of the file. | Plain and ordinary meaning. Dropbox disagrees with Datanet's alternative proposed construction. | Plain-and-ordinary meaning. |

58

| Term No. | Term | Datanet's Proposed Construction | Dropbox's Proposed Construction | Court's Final Construction |
|---|---|---|---|---|
| 3 | "substantially imperceptible impact…from a user's point of view"<br><br>U.S. Patent No. 10,585,850, Claims 9, 17.<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "computing device performance is not affected perceivably by the user." | Indefinite.<br><br>Dropbox disagrees with Datanet's alternative proposed construction. | Indefinite. |
| 4 | "a selection to preview a selected previous version of the file"<br><br>U.S. Patent No. 10,585,850, Claims 1, 10, 18<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Show or represent an example of the earlier version of the file / showing or representing an example of an earlier version that has been chosen" | A selection to view the content of a selected previous version of the file before restoration / viewing the content of the selected revision of said file before restoration/viewing the selected another revision of said file before restoration | Plain-and-ordinary meaning. |
| 5 | "retrieving the restorable representation"<br><br>U.S. Patent No. 10,585,850, Claims 1, 6, 10, 14, 18<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Finding or getting an example rendering of the chosen file as it previously existed" | Search, locate and return the portrayal, depiction or denotation of a version, such as an image, picture, symbol, or sign that may be restored to a prior version of the file | Plain-and-ordinary meaning. |

| Term No. | Term | Datanet's Proposed Construction | Dropbox's Proposed Construction | Court's Final Construction |
|---|---|---|---|---|
| 6 | "temporary first storage location" U.S. Patent No. 8,473,478, Claims 1, 8–11  "first temporary storage location" U.S. Patent No. 8,473,478, Claims 1, 8–11  "temporary storage location" U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 23, 24.  Proposed by Dropbox | No need for construction; plain and ordinary meaning.  Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." | Any storage device, buffer, folder, directory or designated area or location on a storage device that serves as the first storage location to which the archive file is temporarily moved after its creation | "temporary" / "first": Plain-and-ordinary meaning.  "storage location": any storage device, or a buffer, folder, directory or designated area on a storage device. |

| Term No. | Term | Datanet's Proposed Construction | Dropbox's Proposed Construction | Court's Final Construction |
|---|---|---|---|---|
| 7 | "intermediate storage location"<br><br>U.S. Patent No. 8,473,478, Claim 1; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 27, 28, 30<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "A buffer, folder, directory or designated area on a storage device that can store data." | Any storage device, buffer, folder, directory or designated area or location on a storage device that is a non-permanent storage location to which the archive file is moved after the first temporary storage location and before a final destination. | "intermediate": Plain-and-ordinary meaning.<br><br>"storage location": any storage device, or a buffer, folder, directory or designated area on a storage device. |
| 8 | "final destination"<br><br>U.S. Patent No. 8,473,478, Claim 1; U.S. Patent No. 9,218,348, Claim 1<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "Any storage device or a buffer, folder, directory or designated area on a storage device that can store data" | A location to which the archive file is last moved | Plain-and-ordinary meaning. |
| 9 | "event"<br><br>U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 26, 27<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "happening" or "an action or occurrence to which a program might respond". | a triggering notification or message about a storage device status or the status of an operation performed on a file | Plain-and-ordinary meaning. |

| Term No. | Term | Datanet's Proposed Construction | Dropbox's Proposed Construction | Court's Final Construction |
|---|---|---|---|---|
| 10 | "timer"<br><br>U.S. Patent No. 8,473,478, Claims 8, 10; U.S. Patent No. 9,218,348, Claim 26<br><br>Proposed by Dropbox | No need for construction; plain and ordinary meaning.<br><br>Alternatively, "a mechanism, control device, or software that can count, record or indicate time or intervals" | device or component that measures and reports time intervals | Plain-and-ordinary meaning. |
| 11 | "archive file"<br><br>U.S. Patent No. 8,473,478, Claims 1, 8–11; U.S. Patent No. 9,218,348, Claims 1, 8, 12–15, 20, 26<br><br>Proposed by Datanet | "1) one or more files containing all of the data of an operating file in a native or altered format and/or 2) one or more files containing at least some of the data of an operating file in a native or altered format [with or without] references to the location of the remainder of the native or altered data of the operating file." | "A file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file." | "A file containing all of the data of an operating file in a native or altered format and/or a file containing at least some of the data of an operating file and including references to the location of the remainder of the data of the operating file." |